OPINION
Plaintiff-Appellant, Ronald A. Yontz ("Yontz"), brings this appeal from a decision of the Court of Common Pleas of Hardin County entered pursuant to a jury verdict in favor of Defendant-Appellee, Ronald D. Griffin ("Griffin"), on an issue of contract interpretation. For the reasons expressed in the following opinion, we affirm the judgment of the trial court.
In May, 1992, Yontz and Griffin formed Tifton Broadcasting Corporation ("Tifton"), a company that was incorporated and had its principal place of business in the state of Georgia, for the purpose of doing business as various local radio stations. Yontz and Griffin were the sole shareholders and each party owned 500 shares of Tifton stock. On April 30, 1994, a document entitled "Stock Cross-Purchase Agreement" was executed between Yontz, Griffin and Tifton to resolve any future issues regarding the transfer of Tifton stock. The agreement contained a choice of law clause stating that Georgia law governed any dispute.
Paragraph 2 of the agreement provides that if a shareholder receives an offer to purchase Tifton stock from a third party, that shareholder is obligated to give the other shareholder the opportunity to buy the stock at book value for a period of 30 days from the date of the initial offer. Paragraph 7 of the agreement goes on to state that in the event of the death of one shareholder, the other shareholder shall purchase all of the shares of Tifton stock owned by the deceased at a price determined by certain appraisers. A separate clause immediately following Paragraph 7 states that "[n]otwithstanding any of the foregoing; however, the parties hereto may from time to time by unanimous written agreement establish a value for such stock by certificate or otherwise for such period of duration as they elect which value shall be utilized to determine the purchase price of such stock." In accordance with this section, commonly referred to in this action as the "notwithstanding clause", the parties also entered into a written "Certificate of Value" on April 30, 1994, which assessed the outstanding shares of Tifton stock at $600 per share. The Certificate of Value did not specify whether it was to be applied to inter vivos transfers, transfers upon death or both.
Thereafter, on April 10, 1995, Griffin received an offer from his brother, Russell, to purchase Griffin's outstanding shares of Tifton stock for $200,000; Griffin accepted the offer on April 12, 1995. Yontz then attempted to exercise his option to purchase under the parties' agreement on April 28, 1995. Since the book value of the stock was calculated at less than zero, Yontz offered Griffin $1 for the stock. On May 15, 1995, Griffin informed Yontz that he would not accept the $1 proposal since the price was not in accordance with the previously executed agreements.
Yontz then filed a complaint on June 6, 1995, requesting the court to order Griffin to specifically perform under the agreement and sell his 500 shares of Tifton stock to Yontz for book value. (At the time the suit was commenced, both parties were residents of Ohio.) Griffin subsequently filed an answer and counterclaim for Yontz' failure to adhere to the terms of the agreement; Griffin also prayed for dissolution of the corporation and that the matter be submitted to arbitration.
On September 23, 1996, Yontz filed a Motion for Summary Judgment on the issue of whether the stock should be sold at book value or at $600 per share as stated in the Certificate of Value. Yontz argued that, as a matter of law, he should be entitled to relief because the plain language of the Stock Cross-Purchase Agreement required book value to be used in an inter vivos transfer of the stock, as in this case, while the Certificate of Value only applied to transfers upon the death of a shareholder. Griffin responded and filed his own motion for summary judgment claiming that the Certificate of Value should control no matter what type of transfer is involved because the "notwithstanding clause" clearly modified all preceding sections of the Stock Cross-Purchase Agreement.
On January 7, 1997, the trial court issued a judgment entry denying both motions. The court found that "[i]n terms of syntax, punctuation, grammar and language placement, a case can logically be made for each side. The provisions can be construed either way without doing violence to the provisions of the contract, while giving effect to all provisions." As a result of this decision, the issue of the price of the stock was subsequently tried to a jury. On April 25, 1998, the jury returned a verdict in favor of Griffin based upon the conclusion that the Certificate of Value controlled.
Yontz then filed a Motion for Judgment Notwithstanding the Verdict on June 3, 1997, arguing that the verdict was contrary to Georgia law, that the jury was incorrectly instructed and that the verdict was based upon passion due to the fact that Griffin was suffering from Lou Gherig's disease. On June 19th, the court overruled Yontz' motion. The parties continued to litigate the remaining issues; however, on April 2, 1998, Yontz filed a motion asking the court to reconsider its previous disposition of the Motion for Judgment Notwithstanding the Verdict because Griffin failed to properly respond to discovery requests and new, relevant evidence had been revealed after the fact. The court again overruled Yontz' motion on June 8, 1998. Thereafter, the trial court disposed of all outstanding matters and Yontz perfected the instant appeal. For the sake of clarity, we have chosen to address Appellant's assignments of error out of their original order.
Assignment of Error III
 The trial court erred in overruling Plaintiff-Appellant's pretrial motion for summary judgment given that there were no genuine issues of material fact in the pending matter and Plaintiff-Appellant was entitled to judgment as a matter of law.
It is well-established under Ohio law that a grant of summary judgment is erroneous unless the moving party can demonstrate that:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United (1977), 50 Ohio St.2d 317, 327; Civ.R. 56(C). In determining whether a matter was properly disposed of by way of summary judgment, an appellate court reviews the issue under the same standard as that of the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129.
In this case, the trial court found that summary judgment was inappropriate because the "notwithstanding clause" could have been interpreted according to either Yontz' or Griffin's position, especially in light of the existing Certificate of Value, which assessed the stock at $600 per share. On appeal, Yontz argues that he was entitled to summary judgment because the rules of contract construction under Georgia law mandate a finding that book value rather than the Certificate of Value controlled in an inter vivos transfer of Tifton stock. Yontz claims that the trial court ignored the pertinent Georgia statutes and caselaw while incorrectly applying Ohio law to determine the matter.
Yontz sets forth several examples of Georgia authority to support his position, which we will assume, for the sake of argument, are accurate and complete interpretations of the law of that jurisdiction. We have summarized the rules that Yontz has provided as follows: (1) when possible, each and every portion of a contract should be upheld and given full effect; (2) if a contract contains conflicting provisions that cannot possibly be resolved, the first of such provisions prevails and the latter must be ignored; (3) any ambiguity must be construed against the party who drafted the contract; and (4) if one party knows that the other party has misunderstood the intent of the contract, the contract shall be interpreted against the party who had knowledge of the confusion. Although it does appear that the judgment entry denying summary judgment relies on Ohio rather than Georgia law, we find that the decision was appropriate because the trial court ultimately reached the right conclusion, even if for the wrong reasons. See, Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93,96, citing Agricultural Ins. Co. v. Constantine (1944),144 Ohio St. 275,284.
With respect to the first of the aforementioned rules of construction, we find that, contrary to Yontz' argument, all clauses in the Stock-Cross Purchase Agreement can logically be given full effect. Paragraph 2 essentially provides for an option to purchase a party's shares for book value upon notice that an offer from a third party has been made. Paragraph 7 provides that in the event of the death of a shareholder, the other shareholder must purchase the deceased's shares according to an appraisal value. The "notwithstanding clause" does not completely nullify Paragraph 2 as written. Rather, the "notwithstanding clause" merely supplies the shareholders with an alternative method of valuating Tifton stock between themselves, presumably for the purpose of allowing the shareholders to bypass the severity of the general agreement in the event that the book value was either extremely high or extremely low at the time of a desired transfer. Thus, we find that Paragraph 2 is not violated by the "notwithstanding clause", especially since the parties were not mandated to choose that option.
Next, we must analyze the agreement according to the second rule of construction proposed by Yontz, namely, that if two clauses are so conflicting that a resolution is impossible, the first is to be given effect and the second is to be ignored. We find that this rule does not apply to the case at hand since the clauses at issue are merely ambiguous, not wholly inconsistent.
"Inconsistent" has been defined as "[m]utually repugnant or contradictory. Contrary, the one to the other, so that both cannot stand, but the acceptance or establishment of the one implies the abrogation or abandonment of the other * * *." Black's Law Dictionary (6 Ed.Rev. 1991) 526. On the other hand, an ambiguity exists "if reasonable persons can find different meanings in a * * * document, etc.; when good arguments can be made for either of two contrary positions as to a meaning of a term in a document." Black's Law Dictionary (6 Ed.Rev. 1991) 52.
Yontz claims that the "notwithstanding clause" is utterly inconsistent with Paragraph 2; however, we have already found that both clauses can logically stand together. We do, nonetheless, agree with the finding of the trial court that the effect of the "notwithstanding clause" is ambiguous, particularly because of the general language contained therein and the fact that it is placed separate and apart from Paragraph 7. In addition, the general language of the Certificate of Value supports the trial court's finding as well. Thus, since the clauses are ambiguous and not inconsistent, we find that the trial court did not err in failing to apply this second rule of construction.
Likewise, we disagree with Yontz' third contention that the court should have construed the contract against Griffin since he was the party who formulated the Stock Cross-Purchase Agreement. The record is clear that Herbert Benson, the attorney for Tifton Broadcasting, Inc., drafted the agreement on behalf of the corporation and the two shareholders. Griffin did not possess an advantage with regard to the drafting of this document since it was done by an attorney who represented the interests of all parties involved.
Finally, we find that the court did not err in failing to construe the agreement against Griffin due to his alleged knowledge that Yontz understood that the "notwithstanding clause" only applied to stock transfers upon death. Indeed, Yontz' motion for summary judgment contains no evidence tending to show that Griffin was actually aware of Yontz' confused interpretation of the agreement.
Although it appears that the trial court applied Ohio law in determining the motions for summary judgment, we cannot find that the ultimate denial of Yontz' motion was erroneous since we have concluded that even if Georgia law had been applied, Yontz was not entitled to judgment as a matter of law. Accordingly, Appellant's third assignment of error is overruled.
Assignment of Error II
 The trial court erred in refusing to properly instruct the jury as to the applicable Georgia law of contract construction as was requested by Plaintiff-Appellant.
In his third assignment of error, Yontz contends that the trial court should have instructed the jury as follows:
 (1) Should you determine that two clauses of the Agreement are so inconsistent with each other that they cannot stand together, you are to give meaning to the clause which first appears in the Agreement and you are to disregard the clause which subsequently appears in the Agreement.
 (2) The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning.
 (3) If you are unable to ascertain the meaning of the Agreement after following the aforementioned instructions, you are to resolve any ambiguity against the party who formulated the Agreement.
Although these proposed instructions may correctly reflect current Georgia law as to the construction of contracts, we find that the trial court did not err in failing to present these instructions to the jury. First, since we have already determined that the trial court correctly found that the clauses at issue are merely ambiguous and not wholly inconsistent, we conclude that the trial court did not err in refusing to present the first instruction to the jury. Likewise, we find that the court did not err in refusing to instruct the jury on Yontz' second proposal since the evidence did not reflect that Griffin was aware of Yontz' understanding of the "notwithstanding clause". Finally, since the record is clear that the Stock Cross-Purchase Agreement was formulated on behalf of all parties involved, including the corporation, we cannot find that the court erred by refusing to instruct the jury on the third of Yontz' proposals.
Yontz' second assignment of error is overruled.
Assignment of Error I
 The trial court erred in failing to properly apply the law of the State of Georgia to its analysis of the substantive matters of the pending matter.
Given that we have already found that the aforementioned rules of contract construction pursuant to Georgia law were not applicable to this case, Appellant's first assignment of error is overruled.
Assignment of Error IV
 The trial court erred in failing to reconsider the Motion for Judgment Notwithstanding the Verdict after the revelation of newly discovered evidence.
Although not clearly set forth in the assignment of error, Yontz essentially makes two separate assertions herein. Yontz argues that the trial court erred in denying his initial motion for judgment notwithstanding the verdict and Yontz also maintains that the trial court erred in denying his motion for reconsideration of the previously denied motion. We find both of these arguments to be without merit.
We will first address Yontz' argument regarding the initial motion for judgment notwithstanding the verdict. It is well-settled that an appellate court must employ the following standard when analyzing such a motion:
 The evidence adduced at trial and the facts established by admissions in the pleadings in the record must be construed most strongly in favor of the party against whom the [JNOV] motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination * * *.
Milazzo v. Rudolph Foods Co. (Feb. 3, 1997), Allen App. No. 1-96-6, unreported, quoting Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275. This standard is the same as that used when evaluating a motion for directed verdict. Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, 137. Based upon the record in this case, and construing the evidence most strongly in favor of Yontz, we find that it was possible for reasonable minds to reach different conclusions as to the intended effect of the "notwithstanding clause". Thus, we cannot conclude that the trial court erred in refusing to sustain Yontz' initial motion.
With regard to Yontz' argument concerning the denial of the motion to reconsider the motion for judgment notwithstanding the verdict, we must point out that there is no such mechanism provided for in the Ohio Rules of Civil Procedure. Pitts v. Ohio Dept. of Transp. (1981), 67 Ohio St.2d 378, paragraph one of the syllabus; State v. Tijerina (Dec. 5, 1997), Defiance App. No. 4-97-16, unreported. Thus, a trial court's refusal to entertain such a motion is not erroneous. Nonetheless, in the appellate brief submitted to this court, Yontz appears to argue that such motion should have been construed as one for relief from judgment pursuant to Civ.R. 60(B). We are not convinced since it is clear that the motion for reconsideration was not argued in accordance with Civ.R. 60(B) or any of the relevant caselaw.
Based upon the foregoing, Appellant's fourth assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
BRYANT, P.J., and HADLEY, J., concur.