OPINION
Plaintiffs-appellants, Jesse Barnett ("Jesse") and his parents, Tammy and Jesse Osborne, appeal a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Rick and Martha Baker, in a personal injury action.[1] We affirm the judgment of the trial court.
This case arises from an automobile accident that occurred in the late evening hours of March 14, 1998 at the intersection of Sycamore Street and Radabaugh Road in Madison Township, Butler County, Ohio. Thomas Combs ("Combs") and Jesse were passengers in a car driven by William Brian Carr ("Carr"). Jesse was severely and permanently injured, and Combs and Carr were killed, when Carr lost control of the vehicle, causing an accident.
The scene of the accident can be best described as follows: Sycamore Street is an east-west paved roadway which dead-ends on its east end into Radabaugh Road in a "L" intersection. At the end of Sycamore Street is a "stop" sign. One turning right at the intersection (going southbound) drives onto a gravel private road, whereas one turning left at the intersection (going northbound) drives on Radabaugh Road, a paved roadway. The speed limit is thirty-five m.p.h. Appellees reside at 3200 Radabaugh Road. In their front yard, next to their driveway, is a twenty-two thousand pound boulder, which before the accident was located fifteen feet from the roadway. In his deposition, Rick Baker testified that the boulder was not directly across Radabaugh Road from Sycamore Street.
On the evening of March 14, 1998, Jesse, Combs, and Carr went to a wedding reception where they drank alcohol. Jesse and Carr had also been drinking alcohol prior to the reception, after they had left work. All three eventually left the reception together and were driving on eastbound Sycamore Street. Ashford McGuire ("McGuire") lives on Sycamore Street at the corner of Sycamore Street and Radabaugh Road, across from appellees' house. In his deposition, McGuire testified that as the car was approaching the intersection, and as it passed his house, "the car was still winding out," that is, "like you step on the accelerator." Knowing that they would not make the corner, McGuire told his wife to call 911.
The vehicle ran the stop sign at the end of Sycamore Street, went airborne, struck the boulder in appellees' front yard, and flipped over before landing and sliding to a final rest against a tree. The force of the collision caused the twenty-two thousand pound boulder to move fourteen inches. The vehicle was traveling at about seventy-four m.p.h. as it was approaching the intersection. Carr and Combs were found dead at the scene. With the help of McGuire and other people at the scene, Jesse was able to extricate himself from the car before it became engulfed with flames.
In his deposition, McGuire testified that following the accident, he visited Jesse once at the hospital, and that Jesse called him twice. During their conversations, Jesse stated that he was in the back seat scared, telling Carr to slow down, but that Carr, goaded on by Combs, was driving fast to scare Jesse. McGuire also testified that two days after the accident, some of Jesse's relatives came to the scene of the accident. There, they told McGuire that Carr had lived in an apartment complex one mile up Sycamore Street for two years, had driven Sycamore Street numerous times, and knew about the "L" intersection.
Appellants filed a complaint against appellees on February 11, 1999, and an amended complaint on December 15, 1999, alleging negligence, premises liability, and loss of parental consortium. On January 20, 2000, appellees filed a motion for summary judgment. On February 24, 2000, and again on March 21, 2000, appellants filed a motion to strike the exhibits attached to appellees' motion for summary judgment. By decision filed October 6, 2000, the trial court granted appellees' motion for summary judgment. By entry filed the same day, the trial court also summarily denied appellants' motions to strike. Appellants filed this appeal and raise two assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S [sic] OBJECTION TO AND MOTION TO STRIKE EXHIBITS ATTACHED TO THE APPELLEE'S [sic] MOTION FOR SUMMARY JUDGMENT.
 Exhibits attached to appellees' motion for summary judgment consisted of a crash report of the accident prepared by three law enforcement officers, excerpts of McGuire's and Rick Baker's depositions, and Jesse's answers to Rick Baker's first set of interrogatories. Following appellants' motion to strike the exhibits, appellees filed notices of filing the depositions of Rick Baker and McGuire, and Jesse's answers to Rick Baker's first set of interrogatories, as well as affidavits from the three officers who prepared the crash report. The notices of filing and the affidavits were filed the same day as appellees' reply to appellants' memorandum contra summary judgment. In their renewed motion to strike the exhibits, appellants argued that "[a]lthough the filing of the depositions * * * cure[d] [the] defect, the affidavits of police officers * * * [did] not cure the double hearsay/hearsay-within-hearsay" of the crash report. The trial court summarily denied appellants' renewed motion to strike. On appeal, appellants do not appear to challenge Jesse's answers to the interrogatories as an exhibit. We will therefore only address whether the trial court erred by failing to strike the crash report.
Appellants first argue that it was error for the trial court not to strike the crash report where the report was hearsay and therefore inadmissible. Appellees respond that the crash report was admissible as a public record under Evid.R. 803(8).
Evid.R. 803(8)(b) excepts from the general prohibition against hearsay any reports setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." "A police report constitutes a `public record' for evidentiary purposes." Petti v. Perna
(1993), 86 Ohio App.3d 508, 513. However, the statements made therein "must be either the firsthand observations of the official making the report or those of one with a duty to report to a public official." Id.
The crash report filed with appellees' motion for summary judgment consists of (1) the investigatory reports of three officers from the Butler County Sheriff's Department, namely, Captain Michael Grimes and Deputy Sheriff David Marcum, who were dispatched to the scene of the accident, and Deputy Sheriff Ben Kramer, who was assigned to investigate the accident; (2) handwritten statements made to Deputy Marcum by two neighbors and a Trenton police officer; and (3) the blood alcohol content ("BAC") levels of Carr and Combs, allegedly from the coroner's office. The investigatory report of Deputy Kramer also includes Rick Baker's statements to the deputy regarding statements made by other people to Rick Baker.
Upon reviewing the crash report in its entirety, we find that specific portions of the report are inadmissible. First, with regard to the BAC levels of Carr and Combs, we note that although they were allegedly from the coroner's office, they were neither sworn, certified, or authenticated. Rather, they were merely handwritten on a piece of paper included in the crash report. In the absence of any verification or authentication as to the veracity of those BAC levels, we find that they are inadmissible and could not be admitted as part of the crash report. See Petti, 86 Ohio App.3d at 514.
Second, with regard to the handwritten statements made to Deputy Marcum by two neighbors and a Trenton police officer, and Rick Baker's statements to Deputy Kramer regarding statements made by other people to Rick Baker, we find that they too are inadmissible. As already noted, to be admissible under Evid.R. 803(8), statements made in police reports must be "either the firsthand observations of the official making the report or those of one with a duty to report to a public official." Id. at 513. "All persons furnishing and recording information must be under an official duty to do so." State v. York (1996), 115 Ohio App.3d 245,248. "If the supplier of information is not under a duty to do so, an essential link in Evid.R. 803(8) is broken." Id.
The handwritten statements made by two neighbors to Deputy Marcum, and Rick Baker's statements to Deputy Kramer are clearly not the firsthand observations of either deputy; nor were Rick Baker and the two neighbors under a duty to report their observations to either deputy. With regard to the handwritten statement made by a Trenton police officer to Deputy Marcum, it is not clear whether the Trenton police officer was dispatched to the scene or whether he just happened to be there. It is therefore unclear whether the officer was under a duty to report that night. We therefore find that all of the foregoing statements were inadmissible under Evid.R. 803(8) and could not be admitted as part of the crash report. See Petti, 86 Ohio App.3d at 514.
We, however, find that the remainder of the crash report, which consists of the investigatory reports of the three officers dispatched to the scene of the accident, reports based upon the officers' firsthand observations and work, is admissible as a public record under Evid.R. 803(8). See Muncy v. Am. Select Ins. Co. (1998), 129 Ohio App.3d 1.
Appellants also argue that the crash report is improper evidence under Civ.R. 56(C). We disagree. Civ.R. 56(C) provides that only "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence * * * and written stipulations of fact" are properly considered on a motion for summary judgment. "While a police report does not fit squarely into one of those categories, a police report may properly be considered on summary judgment if it is accompanied by an appropriate affidavit." Id. at 5-6. Indeed, the "proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R 56(E)." Id. at 6. In the case at bar, the crash report is accompanied by affidavits from Deputies Marcum and Kramer, and an affidavit by Captain Grimes certifying the report's accuracy.
Appellants argue, however, that pursuant to Civ.R. 56(E) and based upon this court's decision in Komenovich v. AK Steel Corp. (Jan. 25, 1999), Butler App. No. CA98-08-172, unreported, the officers' affidavits should be stricken in their entirety. Civ.R. 56(E) provides in pertinent part that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." In Komenovich, we held that "[i]f an affidavit is based upon inadmissible evidence, a court shall disregard it when considering a motion for summary judgment." Id. at 16.
We note at the outset that the foregoing proposition in Komenovich is a misstatement of the case law relied upon. In support of the foregoing proposition, Komenovich cited to Felker v. Schwenke (1998),129 Ohio App.3d 427, which in turn cited to Tokles Son, Inc. v.Midwestern Indem. Co. (1992), 65 Ohio St.3d 621 . Tokles states that "[o]nly facts which would be admissible in evidence can be stated in affidavits and relied upon by the trial court when ruling upon a motion for summary judgment." Tokles at 631, fn. 4. Felker in turn states that "[a] motion for summary judgment cannot be supported by an affidavit that consists of hearsay or other inadmissible evidence." Felker at 431. We find that those cases, along with Civ.R. 56(E), clearly hold that supporting and opposing affidavits cannot themselves contain hearsay or other inadmissible evidence. Neither those cases nor Civ.R. 56(E) support the proposition that an affidavit which does not contain hearsay or other inadmissible evidence and which is accompanying an exhibit, which itself has hearsay or other inadmissible evidence, must be stricken in its entirety.
In the case at bar, the officers' affidavits all state (1) that the officers are employed by the Butler County Sheriff's Department, (2) their badge number, (3) whether they were dispatched to the scene or assigned to investigate the accident, (4) the recording of the results of their investigation of the accident in the crash report, (5) their personal knowledge of the information contained in those portions of the crash report which bear their name and badge number, and (6) the fact that those portions of the crash report which bear their name and badge number are true and correct to the best of their knowledge.
Upon reviewing the officers' affidavits, we find that they do not contain hearsay. Rather, the affidavits accompany the crash report which, as previously held, includes inadmissible hearsay portions, that is, the BAC levels of Carr and Combs, the handwritten statements made by two neighbors and a Trenton police officer to Deputy Marcum, and Rick Baker's statements to Deputy Kramer. We held that those portions could not be admitted as part of the crash report. Faced with proper affidavits under Civ.R. 56 but accompanying a crash report which contains specific inadmissible portions but which is otherwise admissible as a public record, we find that the better practice is for this court (which reviews summary judgment decisions de novo) to strike the inadmissible portions of the crash report. See Jones v. Shelly Co. (1995),106 Ohio App.3d 440 (appellate court reviews trial court's decision to grant summary judgment de novo). Those stricken portions will therefore not be relied upon in our analysis of appellants' second assignment of error.[2]
In light of all of the foregoing, we find that the trial court did not err by failing to strike the crash report and the accompanying affidavits of the officers. Appellants' first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN GRANTING THE APPELLEES' MOTION FOR SUMMARY JUDGMENT.
 It is well-established that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, show that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. As already noted, this court reviews a trial court's decision to grant summary judgment de novo. Jones, 106 Ohio App.3d at 445.
Under this assignment of error, appellants present six issues for our review. In their first issue, appellants argue that the trial court erred by rejecting the affidavit of their expert witness. In opposition to appellees' motion for summary judgment, appellants submitted the affidavit of James D. Madden, a "professional engineer and experienced accident reconstructionist." The affidavit essentially states that the boulder was a "serious hazard" and the cause of the accident. In rejecting the affidavit, the trial court held that:
 [Appellants] offer an expert witness' opinion about whether the condition was unreasonably dangerous. It is not the function of an expert to provide an opinion about an ultimate issue of fact left for a jury, an expert's function is to provide opinions upon questions which are on subject outside of common knowledge or require specialized knowledge.
 Upon reviewing Madden's affidavit, we find that it was not properly submitted in opposition of summary judgment. It is well-established that expert affidavits offered in support or in opposition of summary judgment must comply with Civ.R. 56(E) as well as Evid.R. 702 through 705 in order for a court to consider them in a summary judgment motion. Miltenberger v. Exco Co. (Nov. 23, 1998), Butler App. No. CA98-04-087, unreported, at 15. In addition to the requirements in Civ.R. 56(E), the affidavit must also "set forth the expert's credentials and the facts or data he considered in rendering his opinion." Id. (Emphasis added.) Madden's affidavit fails to establish his credentials or qualifications as an expert witness. It was therefore properly rejected.[3]
Appellants' first issue for review is overruled.
In their second issue for review, appellants argue it was erroneous for the trial court to grant appellees' motion for summary judgment where there is a genuine issue of material fact as to whether Jesse was a discovered or undiscovered trespasser. Appellants contend that in light of the fact that "[a]ppellees knew of the propensity of traffic crashes at this specific intersection, including on multiple previous occasions vehicles going through the intersection * * *, and either trespassing onto their property or striking objects adjacent to it and to that intersection[,]" Jesse was a discovered trespasser.
The distinction between a discovered and an undiscovered trespasser is important, for a landowner's duty to the trespasser is affected by that distinction. To an undiscovered trespasser, a landowner owes no duty other than to refrain from injuring such trespasser by willful or wanton misconduct. Sorrell v. Ohio Dept. of Natural Resources (1988),40 Ohio St.3d 141, 144. "Intruders who come without [the landowner's] permission have no right to demand that he provide them with a safe place to trespass, or that he protect them in their wrongful use of his property." Id. By contrast, "if a landowner knows or should know that trespassers have been on his land, then these persons are discovered trespassers to whom the landowner owes the duty of ordinary care to warn of danger." Tudor v. Cincinnati (1998), 130 Ohio App.3d 805, 810.
In support of their contention that Jesse was a discovered trespasser, appellants point to appellees' knowledge of "the propensity of traffic crashes at this specific intersection" and the fact that there had been seven previous crashes in four years at that intersection. However, the determination of whether one is a discovered trespasser does not depend on the mere existence of past trespasses, but on whether the landowner knew or had notice of past trespasses on his property. In his deposition, Rick Baker testified about the two previous accidents of which he knew. The first one involved a driver sliding through the intersection because of black ice. The driver stopped "in the grass * * * at the edge." The second accident involved a driver who "didn't stop because it was foggy" and who hit a utility pole located at the end of Sycamore Street on Rick Baker's property. Neither accident involved the boulder. Rick Baker also testified there had been "fender benders" where "people [didn't] stop at the sign and * * * hit other cars." However, those accidents never came onto his property.
In her deposition, Martha Baker testified about the three previous accidents of which she knew. The first involved a driver who ended up in appellees' yard after "apparently" running through the intersection. The second and third accidents happened on the same very foggy morning. One of the accidents involved a hit and run where the driver apparently hit a telephone pole. The second accident involved a driver hitting the same telephone pole. Martha Baker testified that it was so foggy that "you could hardly see much distance in front of you." With regard to the alleged seven previous accidents at that intersection, there is no evidence that they involved the boulder or were more than a minor deviation from the roadway.
Appellants cite to several cases where there was a genuine issue of fact as to whether the trespasser was a discovered trespasser. However, unlike in the case at bar, in all of those cases, the landowner had sufficient actual or constructive knowledge of the previous trespasses, and the trespassing was voluntary, intentional, and on a regular basis. See Tudor, 130 Ohio App.3d 805 (trespassing in a city building), Phillipsv. Dayton Power and Light Co. (1994), 93 Ohio App.3d 111 (climbing utility towers), and Whitener v. Firwood Invest. Co. (Sept. 13, 1995), Montgomery App. No. 14938, unreported (trespassing in the swimming pool of an apartment complex). In addition, those cases involved past trespasses that were very similar, if not identical, not only to one another, but also to the trespass at issue. In the case at bar, although appellees knew about two or three previous accidents, the circumstances of those accidents were very different to the circumstances of Jesse's accident. In addition, the resulting trespasses were neither frequent nor intentional. We therefore find that appellants failed to raise a genuine issue of material fact as to whether Jesse was a discovered trespasser. Appellants' second issue for review is overruled.
In their third issue for review, appellants argue it was error for the trial court to grant appellees' motion for summary judgment where there is a genuine issue of material fact as to whether appellees "breached the[ir] duty of ordinary care by knowingly placing or maintaining a dangerous barrier on property known to be frequented by motorists, and directly into their path of travel." This issue assumes that Jesse was a discovered trespasser. In light of our holding under appellants' second issue, appellants' third issue for review is overruled.
In their fourth issue for review, appellants argue it was error for the trial court to grant appellees' motion for summary judgment where there is a genuine issue of material fact as to whether appellees breached their duty to refrain from willful or wanton misconduct "by knowingly placing or maintaining a dangerous barrier on property known to be frequented by motorists, and directly into their path of travel, and taking no precautionary measures of any kind."
At the outset, we note we are perplexed by appellants' assertion that the boulder was located directly in the motorists' path of travel. That would be true if the boulder was in the street in the middle of the intersection. However, it was located fifteen feet from the roadway prior to the accident, was not directly across Radabaugh Road from Sycamore Street (as testified by Rick Baker), and is now fourteen inches away from its original location. In addition, the intersection is a "L" intersection where Sycamore Street dead-ends into Radabaugh Road. As a result, the normal path of travel of a motorist driving eastbound on Sycamore Street does not include going straight at the stop sign. There is no evidence that any off-road travel at that intersection is an aspect of the usual and ordinary course of travel on either Sycamore Street or Radabaugh Road.
Willful conduct "involves an intent, purpose or design to injure."McKinney v. Hartz Restle Realtors, Inc. (1987), 31 Ohio St.3d 244,246. It "implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." Peoples v.Willoughby (1990), 70 Ohio App.3d 848, 851, quoting Tighe v. Diamond
(1948), 149 Ohio St. 520. "Wanton conduct occurs when one `fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result." McKinney at 246. "To constitute willful and wanton misconduct, an act must demonstrate a heedless indifference to or disregard for others in circumstances where the probability of harm is great and is known to the actor." Rinehart v.Fed. Natl. Mtge. Assn. (1993), 91 Ohio App.3d 222, 229.
Appellees testified that they had the boulder put at the end of their driveway for aesthetic purposes. Although it was never done, appellees originally intended to have their address engraved on the boulder. Rick Baker testified that he never considered placing any types of warnings or markings on the boulder, as he never thought the boulder could injure a motorist. Rick Baker also testified that he never considered taking steps to keep people from coming onto his property. Rick Baker denied placing the boulder as a barrier to keep people off of his property. Rick Baker also testified that at the time he had the boulder put at the end of their driveway, there was already another rock, half the size of the boulder, on the other side of the driveway. There is no evidence that this other rock was involved in accidents at the intersection. As already noted, unlike the accident at issue, the previous accidents at the intersection did not involve the boulder and were based upon very different circumstances.
Upon reviewing the proper evidentiary materials before the trial court, we find that appellants have presented no evidence that appellees had the intent, purpose, or design to injure Jesse. Appellees' conduct of placing the boulder on their property could therefore not have been willful. See Todd v. Heil Windermere Storage Moving Co. (Aug. 25, 1994), Cuyahoga App. No. 66129, unreported. There was also no evidence that appellees failed to exercise any care toward Jesse since there was no indication that it was highly probable that harm would result to Jesse in the manner in which it did, or that appellees knew of this probability. Appellees' conduct could therefore not have been wanton.Id. We therefore find that appellants failed to raise a genuine issue of material fact as to whether appellees breached their duty to refrain from willful or wanton misconduct. Appellants' fourth issue for review is overruled.
In their fifth issue for review, appellants argue that the trial court erred by finding that Jesse's act of getting into the vehicle driven by Carr, rather than the collision of Carr's vehicle with the boulder, proximately caused Jesse's injuries. In granting appellees' motion for summary judgment, the trial court found that appellees had not breached any duty of care and stated that
 [Appellees] contend that it was the drunkenness of Mr. Carr which proximately caused [Jesse's] injuries, not the boulder in [appellees'] yard. The act of riding in a vehicle with an intoxicated driver has been analogized to two drunks playing with a loaded weapon that had a defective safety catch. Dubecky v. Horvitz Co. (1990), 64 Ohio App.3d 726, 734. The court in Dubecky stated, "The accidental shooting of one by the other would be proximately caused by their initial choice to play with a deadly weapon while intoxicated, more so than by the defective safety catch." Id. at 735. [Appellees] argue the injuries sustained by [Jesse] were caused as a result of his choice to get in a vehicle with an intoxicated driver, had he chose not to get in the vehicle he would not have been injured. [Jesse] has the burden to refute the arguments that Mr. Carr's intoxication proximately caused the accident. [Appellees] contend there is substantial evidence which would allow the court to conclude but for Mr. Carr's intoxication, he would not have hit anything let alone the boulder in [appellees'] front yard. Further, had [Jesse] chose not to ride with Mr. Carr he would not have been in the car which hit the boulder and would not have been injured. * * *.
 Finally, [appellees] contend that [Jesse] assumed the risk involved when he got in the vehicle with an intoxicated driver, Mr. Carr. In Tome v. Berea Pewter Mug, Inc., the court stated that an intoxicated person assumes the risk of his own injury either when he himself climbs behind the wheel of a car, or when he rides with a person who he knows to be intoxicated. Tome (1982), 4 Ohio App.3d 98, 102. It is undisputed that both Mr. Carr and [Jesse] drank alcohol before the accident. It is also undisputed that [Jesse] knew Mr. Carr had been drinking when he got into Mr. Carr's vehicle.
 A proximate cause "is that which in a natural and continued sequence contributes to produce the result, without which it would not have happened." Kemerer v. Antwerp Bd. of Edn. (1995), 105 Ohio App.3d 792, 796. "The fact that some other cause concurred with the negligence of the defendant in producing an injury, does not relieve him from liability unless it is shown such other cause would have produced the injury independently of defendant's negligence." Piqua v. Morris (1918), 98 Ohio St. 42, paragraph one of the syllabus.
We note that the defenses of implied assumption of the risk and contributory negligence have been merged under R.C. 2315.19, the comparative negligence statute. As a result, the doctrines of implied assumption of the risk and contributory negligence are no longer an absolute bar to a plaintiff's recovery. Anderson v. Ceccardi (1983),6 Ohio St.3d 110, 113. However, the advent of comparative negligence analysis does not necessarily preclude an award of summary judgment. Summary judgment is properly granted in favor of the defendant in a comparative negligence case where the trial court can determine as a matter of law that "(1) the defendant was not negligent, * * * (2) the defendant's negligence, if any, was not the proximate cause of the plaintiff's injury (such as where the plaintiff's own negligence was the sole proximate cause of the injury), or (3) the plaintiff's own negligence * * * outweighed any negligence of the defendant under R.C.2315.19." Mowery v. McCracken (Aug. 31, 1987), Hancock App. No. 5-85-33, 1987 Ohio App. LEXIS 8541, at *8, unreported.
In the case at bar, it is undisputed that both Carr and Jesse drank alcohol before the accident, from the time they left work and during the wedding reception. It is also undisputed that Jesse knew Carr had been drinking when he got into Carr's vehicle. The evidence shows that the vehicle driven by Carr was approaching a "L" intersection at about seventy-four m.p.h. (presumably to scare Jesse), did not slow down, ran a stop sign, and became airborne before it encountered the boulder in its travel path. Under the foregoing circumstances, we find that the trial court properly found that the boulder in appellees' front yard was not the proximate cause of Jesse's injuries. Appellants' fifth issue for review is overruled.[4]
In their sixth issue for review, appellants argue that the trial court erred by finding that appellants "failed to plead and create a general issue of material fact as [appellees'] commission of the tort of nuisance[.]" The trial court rejected appellants' nuisance claim on the grounds that (1) appellants failed to specifically allege nuisance in their complaints, and (2) there was "no evidence that anyone's rights [were] violated by [appellees] having a rock in their front yard."
We first address whether appellants' failure to specifically plead nuisance in their complaints was fatal to their nuisance claim. Civ.R. 8(A) requires only that a pleading contain a short and plain statement of the circumstances entitling the party to relief. "A party is not required to plead the legal theory of recovery or the consequences which naturally flow by operation of law from the legal relationships of the parties." Illinois Controls, Inc. v. Langham (1994), 70 Ohio St.3d 512,526. "The rules make clear that a pleader is not bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief." Id.
Paragraphs 14 and 15 of appellants' complaint and amended complaint state that
 14. Said rock was placed for the intentional, knowing, willful, and malicious purpose of hindering or impeding, by forceful impact with the rock as a barrier, any car running through that intersection, off of Sycamore Street, and onto [appellees'] property, to prevent their encroachment thereon.
 15. [Appellees] knew, or were aware of, or had reason to believe, and it was reasonably foreseeable that said barrier would be unreasonably dangerous to any person or vehicle accidently or otherwise running past that intersection into their yard.
 In light of the overall liberal allowances accorded to pleadings under the Ohio Rules of Civil Procedure, see Rose v. Clark Oil Refining Corp. (June 10, 1991), Butler App. No. CA90-07-139, unreported, and based upon the definition of nuisance (set forth below), we find that appellants' complaints sufficiently set forth a cause of action under a nuisance theory. The trial court therefore erred by rejecting appellants' nuisance claim on the ground that appellants failed to specifically allege nuisance in their complaints.
We next address whether there is a genuine issue of material fact as to whether appellees' conduct of placing the boulder on their property constituted nuisance. "Nuisance" is a term used to designate "the wrongful invasion of a legal right or interest." Taylor v. Cincinnati
(1944), 143 Ohio St. 426, 432. The liability of the defendant, as well as the plaintiff's entitlement to relief, will depend upon both the nature of the alleged nuisance and the conduct of the defendant. Nuisance may be first designated as "private" or "public." Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 712. Both of these types of nuisances may then be further categorized as "absolute nuisance (nuisance per se)" or "qualified nuisance." Taylor at paragraphs two and three of the syllabus.
A "public nuisance" is "an unreasonable interference with a right common to the general public." Brown at 712. A public nuisance will not arise because a large number of people are affected. Rather, it arises only when a public right has been affected. Id. To recover damages under a claim of public nuisance, the plaintiff must establish, first, an interference with a public right and, second, that the plaintiff has suffered an injury distinct from that suffered by the public at large.Miller v. Carrollton (1993), 91 Ohio App.3d 291, 295-296. The harm suffered by the plaintiff must be different in kind, rather than in degree, from that suffered by other members of the public exercising the public right. Id.
As contrasted with a public nuisance, a "private nuisance" is "a nontrespassory invasion of another's interest in the private use and enjoyment of land." Brown at 712. Unlike a public nuisance, a private nuisance threatens only one or few persons. Taylor at 442. In order for a private nuisance to be actionable, the invasion must be either (a) intentional and unreasonable, or (b) unintentional but caused by negligent, reckless, or abnormally dangerous conduct. Brown at 712-713.
"Nuisance" may be further divided into "absolute nuisance" and "qualified nuisance." The distinction between the categories is not the right or injury asserted, as it is with public and private nuisances. Rather, the distinction between "absolute" and "qualified" nuisance depends upon the conduct of the defendant. Hurier v. Gumm (Nov. 1, 1999), Clermont App. No. CA99-01-005, unreported, at 9.
"Absolute" nuisance is that for which strict liability will attach.Taylor, 143 Ohio St. at 426, paragraph two of the syllabus. An absolute nuisance consists of (1) a culpable and intentional act resulting in harm, (2) an act involving culpable and unlawful conduct causing unintentional harm, or (3) a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault. Metzger v. Pennsylvania,Ohio Detroit RR. Co. (1946), 146 Ohio St. 406, paragraph one of the syllabus. Strict liability will arise where one does or allows anything to be done "without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights." Taylor at 426, paragraph two of the syllabus.
When the defendant commits an unlawful act that is deemed to be an absolute nuisance, the defendant becomes an "insurer" and will be liable for "loss resulting from harm which may happen in consequence of it to persons exercising ordinary care, irrespective of the degree of skill and diligence exercised by himself * * * to prevent such injury." Id. Strict liability will also attach when one is using one's land or property for activities which are unreasonably hazardous. Id. at 434. Under such circumstances, one is under a duty to confine any such hazard. Failure to do so will make one "prima facie answerable for all the damage which is the natural consequence of its escape." Id. at 435. In short, when one commits an unlawful act or is involved in an abnormally dangerous activity, the court considers such activities to be "inherently injurious" and incapable of being "conducted without damaging someone else's property or rights," and strict liability attaches to the activity. Brown, 87 Ohio App.3d at 713.
In contrast, "qualified" nuisance is premised upon negligence. To recover damages for a qualified nuisance, negligence must be averred and proven. Id. at 713 and 715; Allen Freight Lines, Inc. v. Consol. RailCorp. (1992), 64 Ohio St.3d 274, 276. A qualified nuisance is a lawful act "so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another." Metzger, 146 Ohio St. at 406, paragraph two of the syllabus. Under such circumstances, the nuisance arises from a failure to exercise due care. Taylor, 143 Ohio St. at 436. Even that which was lawful in origin may become a nuisance through "negligence in maintenance." Id. at 442.
We now determine whether appellees' conduct of placing and maintaining the boulder was a nuisance. We note that appellants' suit is not based upon an interference with the use and enjoyment of property or rights exclusive to Jesse. Instead, appellants' suit is based upon the assertion that appellees' boulder hindered and impeded "any car running through th[e] intersection, off of Sycamore Street," that is, interfered with the right of travelers generally to drive on Sycamore Street and Radabaugh Road. Thus, appellants' suit is one seeking recovery for a public nuisance, as it asserts a right of the general public. SeeHurier, Clermont App. No. CA99-01-005, unreported, at 12-13.
Appellants argue that the boulder was a qualified nuisance[5] because appellees had notice that it was an unreasonable hazard to traffic going through the intersection at Sycamore Street and Radabaugh Road, based upon the seven previous accidents at the intersection. We disagree. As already noted, the previous accidents did not involve the boulder but rather utility poles. There is no evidence that those accidents involved more than a minor deviation from the roadway. As a result, appellants have failed to demonstrate any similarities between the previous accidents and the present accident which would have put appellees on notice that the boulder was an unreasonable hazard. That a utility pole sitting at the end of Sycamore Street on Rick Baker's property had been hit by two vehicles in the past does not mean that appellees should have expected that the boulder would be hit. See Hurier, Clermont App. No. CA99-01-005, unreported, at 18.
In addition, while a landowner may be liable for damages proximately caused by the maintenance of an unreasonably dangerous off-roadway condition that renders the usual and ordinary course of travel on the roadway unsafe, see Manufacturer's Natl. Bank of Detroit v. Erie Cty.Road Comm. (1992), 63 Ohio St.3d 318, "[n]o precedent exists for imposing a duty on public or private landowners to remove an off-road hazard that renders only off-road travel unsafe, unless the off-road travel is shown to be an aspect of the usual and ordinary course of travel on the roadway." Ramby v. Ping (Apr. 13, 1994), Greene App. No. 93-CA-52, 1994 Ohio App. LEXIS 1539, at *8, unreported.
There is no evidence that the boulder rendered the regularly traveled portion of either Sycamore Street or Radabaugh Road unsafe. Nor could appellants credibly argue, and they did not produce any evidentiary material so showing, that Rick Baker's tract of land was ordinarily and usually traveled by vehicular traffic, even though appellants state in their brief that the property was "known to be frequented by motorists." We therefore find that appellants failed to raise a genuine issue of material fact as to whether appellees' conduct of placing the boulder on their property constituted qualified public nuisance.
Appellants also appear to argue that the boulder was an absolute nuisance when they allege that the placement of the boulder "directly adjacent to and in direct line with a known dangerous intersection, knowing that it was prone to be `run,' is an intentional and culpable act, resulting at least in unintended and accidental harm, although foreseeable." We disagree.
As already noted, an absolute nuisance consists of (1) a culpable and intentional act resulting in harm, (2) an act involving culpable and unlawful conduct causing unintentional harm, or (3) a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault. Metzger, 146 Ohio St. 406, at paragraph one of the syllabus. There is no evidence that appellees unlawfully placed the boulder on their property in a direct line with Sycamore Street or that its placement was in violation of a statute. As a result, the placement of the boulder is neither a culpable and intentional act nor an act involving culpable and unlawful conduct.
To constitute an absolute nuisance, appellees' conduct must therefore involve using their property for activities which are unreasonably hazardous, Taylor, 143 Ohio St. at 434, "and no matter how careful one is, such activities are inherently injurious and cannot be conducted without damaging another's property or rights." State ex rel. R.T.G.,Inc. v. State (Mar. 8, 2001), Franklin App. No. 98AP-1015, 2001 Ohio App. LEXIS 967, at *28, unreported. We cannot say that the placement of a boulder on one's property off the roadway and which does not interfere with the regularly traveled portion of the roadway is an inherently dangerous activity to which strict liability should apply. We therefore find that appellants failed to raise a genuine issue of material fact as to whether appellees' conduct of placing the boulder on their property constituted an absolute public nuisance. Appellants' sixth issue for review is overruled.
In light of all of the foregoing, we find that the trial court did not err by granting appellees' motion for summary judgment. Appellants' second assignment of error is overruled.
YOUNG, P.J., and WALSH, J., concur.
[1] We note that the briefs filed on behalf of appellants violate App.R. 19(A), which requires "double spacing between each line of text except quoted matter[.]" The briefs are instead "one and a half-spaced." This not only violates the rule, it makes it more difficult to read and "diminishes the persuasive value of the finished product." Gillum v.Malishenko (Aug. 2, 1995), Greene App. No. 95 CA 1, 1995 Ohio App. LEXIS 3281, at *1, unreported. "Appellate counsel would do well to keep in mind the criticism that Truman Capote once applied to another author's new book: `That's not writing, that's typing.' In other words, make your briefs readable." Id. at *2.
[2] While those portions of the crash report should have been stricken by the trial court, we find that the trial court's failure to do so was not prejudicial to appellants. As our analysis under appellants' second assignment of error will show, those portions of the crash report which are admissible, when coupled with the officers' affidavits and appellees' other exhibits in support of their motion for summary judgment, were sufficient to support the bases delineated for summary judgment. Carltonv. Davisson (1995), 104 Ohio App.3d 636, 647. That is, we believe the trial court would have reached the same decision had the evidentiary error not occurred.
[3] We note that we have affirmed the trial court's decision, but for different reasons than those set forth by the trial court. A reviewing court passes only upon the correctness of the judgment, not the reasons therefor. Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93, 96. Thus, an appellate court must affirm a trial court's judgment if upon review any valid grounds are found to support it. Id.
[4] We note that we have reviewed the numerous cases cited by appellants under this issue for review. We find, however, that the cases cited by appellants are factually different or distinguishable, and that, as a result, their reasoning and holdings do not apply to the case at bar.
[5] On appeal, appellants mistakenly state that a public nuisance "(sometimes called a nuisance per se or absolute nuisance) is completely different than a nuisance per accidens, or qualified nuisance[.]" As already noted, a nuisance can be either private or public, and both of these types of nuisance may then be further categorized as absolute or qualified nuisances.