JOYCE, APPELLEE, *v.* GENERAL MOTORS CORPORATION; HALSEY ET AL., APPELLANTS.

[Cite as Joyce *v.* General Motors Corp. (1990), 49 Ohio St. 3d 93.]

(No. 88-2049 — Submitted October 18, 1989 — Decided February 28, 1990.)

*Green & Green* and *Peter F. von Meister,* for appellee.

*Turner, Granzow & Hollenkamp* and *David F. Rudwall,* for appellants.

MOYER, C.J. The first issue for our disposition is whether the court of appeals properly construed the trial court's action as a response to defendants' Civ. R. 12(B)(6) motion, rather than as a response to defendants' motion for a directed verdict.

Defendants-appellants contend that it is error to treat a directed verdict entered at the conclusion of plaintiff's case as a motion to dismiss under Civ. R. 12(B)(6).

Civ. R. 50(A)(4) provides in part:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the *evidence* most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." (Emphasis added.)

The primary difference between a directed verdict motion and a Rule 12(B)(6)[1] motion is procedural: A Rule 12(B)(6) motion is made, heard and determined before trial on application of any party, Civ. R. 12(D), while " '* * * [a] directed verdict motion * * * [is] made at trial and decided on the evidence that has been admitted * * *.' " *Grau* v. *Kleinschmidt* (1987), 31 Ohio St. 3d 84, 91, 31 OBR 250, 256, 509 N.E. 2d 399, 405. See, also, *State, ex rel. Keating,* v. *Pressman* (1974), 38 Ohio St. 2d 161, 163-164, 67 O.O. 2d 176, 178, 311 N.E. 2d 524, 526.

Application of the foregoing principles produces the conclusion that defendants were not in a position to make a Rule 12(B)(6) motion once trial had commenced. Furthermore, their Rule 12(B)(6) motion had been overruled prior to trial. The motion before the trial court at the conclusion of plaintiff's case was a motion for a directed verdict.

The question thus posed by the court of appeals' decision is whether the trial court misconstrued appellants' directed verdict motion as a Rule 12(B)(6) motion.

Where, in the interest of justice, it is essential for a reviewing court to ascertain the grounds upon which a judgment of a lower court is founded, the reviewing court must examine the entire journal entry and the proceedings. *A. B. Jac, Inc.* v. *Liquor Control Comm.* (1972), 29 Ohio St. 2d 139, 58 O.O. 2d 342, 280 N.E. 2d 371, paragraph two of the syllabus. It is fundamental in law that the court speaks through its entire journal entry. *Id.* at 142, 58 O.O. 2d at 343, 280 N.E. 2d at 373.

In disposing of the directed verdict motion, the trial judge made the following comment: "Until they are

---

[1] Civ. R. 12(B) provides in pertinent part:

"Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted * * *."

protected as a matter of law, there simply is no right to an idea, and my biggest problem came when I attempted to draft a jury charge * * * [after listening to the *evidence*]. When I got to the issue of personal property, * * * for the jury to find that there is a conversion, they must find that there is a conversion of tangible personal property with title vested in the plaintiff. There is no such thing identifiable within this record. And, therefore, it is my judgment * * * that pursuant to law, the Defendants' motion for directed verdict be sustained and that judgment be entered accordingly." (Emphasis added.) The court further commented that "there is no cause of action [for conversion of ideas]."

While we agree that the trial court should not have used the "no cause of action" language in ruling on the directed verdict motion, it is clear from the record that the court viewed the motion as a directed verdict motion and that its decision was predicated on the evidence adduced at trial.

We have consistently held that a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof. *Agricultural Ins. Co.* v. *Constantine* (1944), 144 Ohio St. 275, 284, 29 O.O. 426, 430, 58 N.E. 2d 658, 663.

For the foregoing reasons, we hold that the court of appeals erred in confining its review of the trial court's proceedings to the allegations set forth in appellee's complaint.

We next consider whether an idea submitted by an employee pursuant to an employee suggestion plan is in itself personal property which may not be converted by another employee.

In *Zacchini* v. *Scripps-Howard Broadcasting Co.* (1976), 47 Ohio St. 2d 224, 226, 1 O.O. 3d 129, 130, 351 N.E. 2d 454, 456, we held that conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights. Thus, before we reach the issue of conversion, we must first determine whether an "idea" is property protected under the law.

In *Gottschalk* v. *Benson* (1972), 409 U.S. 63, 67-71, the United States Supreme Court stated that ideas in themselves are not subject to individual ownership or control. They do not rise to the level of property and are not in themselves protected by law. See, also, Anawalt, Ideas in the Workplace (1988) 7-8. The law does not favor the protection of abstract ideas as the property of the originator. "An idea should be free for all to use at least until someone is able to translate such idea into a sufficiently useful form that it may be patented (trademarked) or copyrighted." *Richter* v. *Westab, Inc.* (C.A.6, 1976), 529 F. 2d 896, 902. In *Puente* v. *President & Fellows of Harvard College* (C.A.1, 1957), 248 F. 2d 799, 802, the court indicated that an idea which is not in a patented (trademarked) or copyrighted form is not protected "unless it is acquired and used under such circumstances that the law will imply a contractual or fiduciary relationship between the parties."

It is thus generally agreed that ideas are not the property of anyone unless expressed in a legally protected manner. *Lear, Inc.* v. *Adkins* (1969), 395 U.S. 653, 668; see *Gottschalk, supra,* at 71; *Sears, Roebuck & Co.* v. *Stiffel Co.* (1964), 376 U.S. 225, 231.

Appellee's ideas were not expressed in a legally protected manner. They were neither patented, copyrighted, trademarked nor imparted pursuant to a fiduciary or contractual relationship. In fact, they were freely divulged to a third party. Public

disclosure of the ideas makes them available to all and operates to deprive appellee of any further rights in them. *Puente, supra,* at 802; *Bonito Boats, Inc.* v. *Thunder Craft Boats, Inc.* (1989), 489 U.S. ____, 103 L. Ed. 2d 118, 132-133, 109 S.Ct. 971, 976. Since the ideas are not property, they are not capable of conversion or appropriation.

For the foregoing reasons, the judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

WRIGHT, H. BROWN and RESNICK, JJ., concur.

SWEENEY and DOUGLAS, JJ., dissent without opinion.

HOLMES, J., dissents.

HOLMES, J., dissenting. Although I agree with the majority's conclusion that the court of appeals erred in not reviewing the trial court's ruling as one for directed verdict, pursuant to Civ. R. 50(A), I cannot concur in the majority's treatment of the substantive issue presented to us. The majority states the issue as simply "whether an 'idea' is property protected under the law." In relying on federal cases dealing with whether certain "ideas" are or are not *patentable,* the majority reaches the broader conclusion that appellee's ideas "were not expressed in a legally protected manner" and thus were not property capable of conversion or appropriation. In doing so, the majority mentions in passing, but I believe fails to consider, a major issue in this case: whether an employee who submits a suggestion in response to a employer-promoted suggestion plan thereby becomes a party to a limited contract with his employer, under which contract the employee may state a cause of action for breach and tortious interference with contractual relations. Because I believe such a contractual relationship may be established, and that appellee here presented sufficient evidence of tortious interference therewith to go to the jury, I must respectfully dissent.

As mentioned, many of the cases relied on by the majority are not on point. In *Gottschalk* v. *Benson* (1972), 409 U.S. 63, the court held that a method for programming a general purpose digital computer was not a "process" within the pertinent sections of the Patent Act, and thus could not be patented. The court, at 67-71, merely stated the long-standing rule that one may not *patent* an idea. *Gottschalk* did not deal with ideas acquired through an employee suggestion plan. Similarly, *Sears, Roebuck & Co.* v. *Stiffel Co.* (1964), 376 U.S. 225, stands for the limited proposition that a state, through its unfair competition laws, cannot protect an unpatentable article in a manner which conflicts with federal patent laws. *Id.* at 231. See, also, *Bonito Boats, Inc.* v. *Thunder Craft Boats, Inc.* (1989), 489 U.S. ____, 103 L. Ed. 2d 118, 138, 109 S.Ct. 971, 981 (striking down a Florida law which prohibited the entire public from engaging in a form of reverse engineering of a product in the public domain).

Finally, *Lear, Inc.* v. *Adkins* (1969), 395 U.S. 653, is most instructive here, as it dealt with an employee-inventor who entered into a licensing agreement by which his employer agreed to pay royalties on the employee's gyroscope improvements until such time as the employee's patent application was refused or the patent held invalid. The inventor's patent was rejected several times and the employer terminated all royalty pay-

ments. A few years later, the inventor obtained his patent and promptly sued his employer for breach of contract. The United States Supreme Court held that the employer could not be estopped from challenging the patent's validity and, if successful, could avoid payment of all royalties accruing *after* the patent's issuance. *Id.* at 669-674. However, the court stated that:

"Adkins' claim to contractual royalties accruing before the 1960 patent issued is, however, a much more difficult one, since it squarely raises the question whether, and to what extent, the States may protect the owners of *unpatented* inventions who are willing to disclose their ideas to manufacturers only upon payment of royalties." *Id.* at 674.

The court declined to address this question, observing that the states had not, at the time of that opinion, themselves determined the extent to which they would respect the *contractual* rights of inventors with unpatented ideas. *Id.* at 675.

Subsequent to *Lear, Inc.*, the United States Supreme Court explicitly recognized that "the fact that a particular item lies within the subject matter of the federal patent laws [does not] necessarily preclude the States from offering limited protection which does not impermissibly interfere with the federal patent scheme." *Bonito Boats, Inc., supra,* at ___, 103 L. Ed. 2d at 144, 109 S. Ct. at 985. See *Sears, Roebuck & Co.* (states may place limited regulations on the use of unpatented designs in order to prevent consumer confusion as to source); *Kawanee Oil Co.* v. *Bicron Corp.* (1974), 416 U.S. 470 (state protection of both patentable and unpatentable trade secrets does not conflict with federal patent laws); *Goldstein* v. *California* (1973), 412 U.S. 546, 552-561; *Aronson* v. *Quick Point Pencil Co.* (1979), 440 U.S. 257, 262.

Thus, in *Puente* v. *President & Fellows of Harvard College* (C.A.1, 1957), 248 F. 2d 799, 802, the First Circuit Court of Appeals correctly recognized that an individual may obtain limited protection for his unpatented (or even unpatentable) ideas which are *"acquired* and *used* under such circumstances that the law will imply a contractual or fiduciary relationship between the parties." (Emphasis added.) The majority here, although citing this rule, inexplicably fails to explore whether such an implied contractual relationship existed in this case — even though the parties' briefs before this court dealt with nothing else.

Specifically, and in addition to the more familiar area of trade secrets, several courts have recognized a cause of action by an employee, sounding in contract or quasi-contract, against his employer where the employee submits a suggestion (idea) in response to the employer's suggestion plan and the employer makes use of the idea without compensating the employee under the terms of the suggestion plan. See *Carlini* v. *United States Rubber Co.* (1967), 8 Mich. App. 501, 154 N.W. 2d 595 (breach of contract theory); *Schott* v. *Westinghouse Electric Corp.* (1969), 436 Pa. 279, 259 A. 2d 443 (unjust enrichment/quasi-contract theory); *Grepke* v. *General Electric Co.* (C.A.7, 1960), 280 F. 2d 508, certiorari denied (1960), 364 U.S. 899 (recovery allowed on a theory of appropriation of a property right); and, generally, Annotation (1971), 40 A.L.R. 3d 1416.

Indeed, in *Raybestos-Manhattan, Inc.* v. *Rowland* (C.A.4, 1972), 460 F. 2d 697, 700, the court held that an employer's suggestion plan constituted a continuing offer to pay for the ideas of all its employees. When the employee in that case submitted his suggestion, the employee accepted the

offer "subject, of course, to all of the provisions of the suggestion system. The result was a valid and enforceable contract. *Robertson* v. *United States*, 343 U.S. 711 * * * (1952)." *Id.* The court further held that, under this contract, the suggestion constituted a trade secret which then became the property of the employer, and the employer was granted an injunction against the use of the trade secret by the employee — who had since terminated his employment and established a competing company. *Id.*

As a general rule, "suggestion plans which provide or represent that an award will be paid for suggestions adopted and used may constitute valid unilateral contracts which become binding when accepted and performed by the promisee." *Lone Star Steel Co.* v. *Scott* (Tex. App. 1988), 759 S.W. 2d 144, 152. In order to recover for a breach of such contract, the employee must demonstrate that the employer's suggestion committee "did not make its decision within the framework of the rules of the plan or that the decision was based upon gross or palpable mistake." *Rogensues* v. *Chrysler Corp.* (1970), 24 Mich. App. 590, 591, 180 N.W. 2d 473, 474, citing *Carlini, supra*. See, also, *Moore* v. *General Motors Corp.* (Mo. App. 1977), 558 S.W. 2d 720, 727.

Employer suggestion plans of the type at issue in this case create wholly unique contractual rights and duties, although implied contracts arising in the employer-employee relationship are not unique to this court. See, *e.g., Luli* v. *Sun Products Corp.* (1979), 60 Ohio St. 2d 144, 14 O.O. 3d 384, 398 N.E. 2d 553; *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150. These suggestion plans encourage creativity and innovation among employees for the greater benefit of the employer. Such plans encourage innovation in those most likely to be innovative — those working with the systems, machinery and processes which their ideas are meant to improve. No "monopoly" in the employee's idea is granted by recognition of a limited, implied contract arising from these suggestion plans,[2] and thus these plans, and the rights and duties which flow from them, are consistent with the purposes of federal patent and copyright law. See *Bonito Boats, Inc., supra*, at ____, 103 L. Ed. 2d at 141-142, 109 S. Ct. at 983-984.

In my view, such an implied contract existed in this case. The record here demonstrates that the General Motors ("GM") Suggestion Plan was heavily promoted among its employees, that in 1985 and 1986 tens of millions of dollars were awarded to employees submitting suggestions, and that corporate savings due to implementation of such suggestions

---

[2] Indeed, the General Motors Suggestion Plan rules contained the following provisions, which distinctly limit the scope of the suggesting employee's rights to his suggestion:

"A suggestion made under the terms and conditions of the General Motors Suggestion Plan is not made in confidence and General Motors, its subsidiaries and the successors and assigns thereof, shall not be obligated in any way with respect to such suggestion except as provided under the Rules of the Plan as set forth herein.

"While an employee making a suggestion under the GM Suggestion Plan may be free to seek patent protection for a suggestion depending on the nature of his or her employment, any protection so obtained shall be subject to the right granted on the Suggestion Form to General Motors Corporation and its subsidiaries, and the successors and assigns thereof, to make full use of the suggestion."

amounted to nearly $350 million for the first nine months of 1986. GM extended a continuing offer to pay for such suggestions by the publication of strict participation rules on the back of every suggestion plan form. When appellee submitted his suggestion he accepted GM's offer, subject to the rules of the plan. A valid enforceable contract resulted. Either party to such contract could protect his interests therein from breach by the other party and from interference by third parties.

Appellee's action for breach of contract must fail, however. As discussed above, recovery under this theory is available only where the employer's *suggestion committee* failed to follow the plan rules, or committed "gross or palpable mistake" in reaching its decision. *Rogensues, supra.* Such an action may be brought only against the employer, GM, and its agents appointed to serve as the "Suggestion Committee," pursuant to the plan rules. Defendant GM was dismissed before trial of this case, and the remaining defendants, Halsey and Tackett, were not members of GM's Suggestion Committee.

On the other hand, appellee clearly stated a claim against these remaining defendants for tortious interference with the contractual relationship established by the GM Suggestion Plan. Appellee properly set forth the existence of his contract with GM in the third paragraph of his complaint. In the ninth through eleventh paragraphs of the complaint, he pleaded the following:

"*IX*

"On or about May 9, 1985, Plaintiff discovered that Defendant Tackett had directed the GMC Suggestion Committee to cancel Plaintiff's award payment voucher and to reverse its recommendation of paying the compensation award to Plaintiff and had in fact directed that an award of $12,800.00 be paid to Defendant Halsey, which GMC did then pay.

"*X*

"Defendants Halsey and Tackett conspired with each other to deprive Plaintiff of his Suggestion and to convert it to their own use and to deny Plaintiff his just and due award compensation, and to unjustly enrich themselves to Plaintiff's detriment.

"*XI*

"Defendant Tackett, while within the scope and authority of his management position with GMC, and in the discharge of his duties, wrongfully deprived and denied Plaintiff of his just and due award compensation, and in so doing breached the duties of fairness and good faith owed by GMC to Plaintiff, and further breached the contract evidenced by GMC's adoption and implementation of Plaintiff's Suggestion."

An action for intentional interference with the performance of a contract exists in this case. "* * * [O]ne who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another is liable to the other for the harm caused thereby. 4 Restatement of Torts 63, Section 766 (1939)." *Juhasz* v. *Quik Shops, Inc.* (1977), 55 Ohio App. 2d 51, 57, 9 O.O. 3d 216, 219, 379 N.E. 2d 235, 238. See, also, 2 Harper, James & Gray, The Law of Torts (2 Ed. 1986) 311, Section 6.7; *Smith* v. *Klein* (1985), 23 Ohio App. 3d 146, 23 OBR 387, 492 N.E. 2d 852. Even if GM did not breach its contract with appellee here by awarding compensation to appellant Halsey, the allegations — and evidence in support

of such allegations presented at trial below — that appellants conspired to use appellee's suggestion as their own and thus deny appellee compensation for his suggestion, may present a jury question on the issue of tortious interference with appellee's contractual relations with GM. "An unlawful interference with a person in the performance of his contract with a third party is just as much a legal wrong as is the unlawful inducement of a breach of that contract by the third party." *Morris* v. *Blume* (1945), 55 N.Y. Supp. 2d 196, 199, affirmed (1945), 269 App. Div. 832, 56 N.Y. Supp. 2d 414.

Civ. R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

"In addition to Civ. R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. *Durham* v. *Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31. Thus, 'if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. *Kellerman* v. *J. S. Durig Co.* (1964), 176 Ohio St. 320 * * *.' *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114, 115." *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 284-285, 21 O.O. 3d 177, 179, 423 N.E. 2d 467, 469.

While the trial court below did consider the evidence before it, pursuant to Civ. R. 50(A), it did so under a mistaken view of the law, *i.e.*, that appellee's suggestion was entitled to *no* protection under the law. The trial court found no set of facts which would support a jury finding of a "conversion of tangible personal property." While this is true, there was substantial competent evidence of the existence of a contractual relationship between appellee and GM. Whether there was substantial, competent evidence (when construed most strongly in favor of appellee) that appellants conspired to intentionally interfere with that relationship is a matter for the trial court on remand.

Accordingly, because I would affirm the court of appeals' judgment as to the existence of a cause of action and remand to the trial court for further proceedings on appellants' motion for directed verdict, I must respectfully dissent.