JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Karen Darkenwald ("Darkenwald") appeals her conviction and the decision of the Cuyahoga County Court of Common Pleas which denied Darkenwald's motion for a new trial.
 {¶ 2} The following facts give rise to this appeal. On April 23, 2002 at approximately 4:40 p.m. in East Cleveland, Ohio, police were called to respond to a shooting at 1765 Carlyon Avenue. Police arrived on scene where they found the victim, Leamon Crawford ("Crawford"), on the porch holding a .357 Magnum. Crawford repeatedly told police "she shot me" and handed over the gun. Crawford was referring to Darkenwald, his girlfriend's mother.
 {¶ 3} Darkenwald was charged with one count of felonious assault in violation of R.C. 2903.11 with one- and three-year firearm specifications pursuant to R.C. 2941.141 and 2941.145, respectively. Darkenwald proceeded to jury trial on May 28, 2003 and was convicted as charged on May 30, 2003.
 {¶ 4} At trial, it was revealed that Darkenwald had arrived at her daughter's house to visit her grandchildren and blocked Crawford's truck in the driveway. Crawford asked her to move her car and both went outside to do the same. Darkenwald did not immediately enter or move her car and an argument ensued. Darkenwald went into her car's storage area and retrieved her .357 Magnum. Darkenwald shot Crawford in the upper left thigh area and then a struggle ensued over the gun. Darkenwald's daughter exited the house and jumped on Crawford. Crawford wrestled the gun away and waited on the porch for the police to arrive. A majority of the event was seen by a neighbor across the street who testified accordingly.
 {¶ 5} Ranesha Darkenwald ("Ranesha"), the defendant's daughter and Crawford's girlfriend, was called by the state to testify in accordance with her written statement to police. Ranesha took the stand and was uncooperative and evasive. Though acknowledging her written statement to police, she consistently claimed not to remember specific facts detailed in her statement. The state requested that the court declare her a hostile witness in order to ask leading questions to develop her testimony consistent with her prior statement. The state's request was granted.
 {¶ 6} Darkenwald testified in her defense that she retrieved the gun to scare Crawford and to stop him from attacking her. Darkenwald testified that she held the gun by the barrel and Crawford snatched it away from her, causing injury to her finger. She testified that she did not recall ever touching or pulling the trigger and she does not know how the gun went off.
 {¶ 7} At the close of the trial, the state requested an instruction on the inferior offense of aggravated assault and Darkenwald requested a self-defense instruction. Both were included in the jury instructions.
 {¶ 8} The jury returned a verdict of guilty as charged and Darkenwald was subsequently sentenced to the minimum, five years in prison.
 {¶ 9} Darkenwald timely appeals the decision of the trial court and advances ten assignments of error for our review.
 {¶ 10} "I. Defendant was prevented from having a fair trial because of irregularity in the proceedings or certain rulings of Court or abuse of discretion by the Court."
 {¶ 11} Darkenwald alleges in her first assignment of error that the trial court improperly declared Ranesha Darkenwald a hostile witness, thereby allowing the state to cross-examine her using her prior statement causing prejudice to the defendant. Darkenwald argues that the witness was not hostile but rather "that it was such a distasteful remembrance for her that she did not want to relive it." The state argues that the witness's demeanor and answers made it clear to the court that she was a hostile witness.
 {¶ 12} Generally, evidentiary rulings made at trial rest within the sound discretion of the trial court. State v. Lundy
(1987), 41 Ohio App.3d 163; State v. Graham (1979),58 Ohio St.2d 350. We give substantial deference to the trial court unless we determine that the court's ruling was an abuse of discretion. State v. Tankersley (April 23, 1998), Cuyahoga App. Nos. 72398 and 72399. "The term abuse of discretion connotes more than error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Nielsonv. Meeker (1996), 112 Ohio App.3d 448. "An abuse of discretion * * * implies a decision which is without a reasonable basis or one which is clearly wrong." Angelkovski v. Buckeye Potato ChipsCo. (1983), 11 Ohio App.3d 159. Abuse of discretion will not be found when the trial court makes the correct decision, however, gives the wrong reason for the decision. Joyce v. Gen. MotorsCorp. (1990), 49 Ohio St.3d 93, 96.
 {¶ 13} In this case, the court declared the witness to be hostile under Evid.R. 607 and allowed cross-examination of the witness using her written statement pursuant to Evid.R. 613. While the end result was correct, in actuality the witness was "adverse" and not a traditional "hostile" witness. In either event, the prosecutor was permitted to ask leading questions. Under these facts, we find that while the state believed it was impeaching Ranesha, the state was actually attempting to develop her testimony consistent with her earlier statement. Therefore, the proper reasoning requires analysis under Evid.R. 611(C).
 {¶ 14} Evid.R. 611(C) states in pertinent part, "* * * When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions." This rule gives the court discretion to allow counsel to proceed with leading questions. In effect, the direct examination becomes a cross-examination by leading questions.
 {¶ 15} Traditionally, a "hostile witness" is one who surprises the calling party at trial by turning against him while testifying. The traditional "hostile witness" is addressed under Evid.R. 607. An "adverse witness" is one who identifies with the opposing party because of a relationship or a common interest in the outcome of the litigation. Many times, the terms "hostile" and "adverse" are used interchangeably without drawing a clear distinction between the meaning of the terms. The distinction in this case, however, is clear.
 {¶ 16} Cross-examination is a term of art used to define the examination of a witness by the opposing party. During cross-examination, the rules allow leading questions. Typically, leading questions are not allowed on direct examination unless an exception applies. See Evid.R. 611. Again, the terms "cross-examination" and "leading questions" are used interchangeably without a clear distinction being drawn between the meaning of the terms.
 {¶ 17} Finally, impeaching a witness involves calling into question the witness's veracity. A witness may be impeached, in addition to other methods, by any of the following: bias, sensory or mental defect, factual contradictions, opinion and reputation, prior convictions, and self-contradictions. See Evid.R. 616.
 {¶ 18} Evid.R. 607 states in pertinent part:
 {¶ 19} "The credibility of a witness may be attacked by any
party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmativedamage." (Emphasis added.)
 {¶ 20} In State v. Burroughs (Dec. 16, 1999), Mahoning App. No. 93-CA-13, Burroughs argued that a state's witness was improperly declared a hostile witness, and he argued that the only way the state could cross-examine its own witness, with leading questions, was if the state showed surprise and affirmative damage under Evid.R. 607. The court disagreed, stating that there were several instances upon these facts in which the trial court could have permitted the prosecution to ask leading questions. Id. The court reasoned that the record indicated numerous times where the witness was uncooperative, evasive, and inaudible. Id. In addition, the witness indicated that she did not want to testify. Id. The court stated that the "identification with the Appellant alone would permit the prosecution to ask leading questions of her on direct examination pursuant to Evid.R. 611(C)." Id.
 {¶ 21} In Burroughs, the witness testified that she recalled making a statement to police, but she could not recall everything she told police. Id. When presented with the statement, she acknowledged it was hers; however, her recollection was apparently not refreshed after she read through it. Id. The court stated that a review of the record indicated that the state was unable to develop any material testimony from that witness and properly sought to cross-examine her to develop her testimony. Id. The court noted that at no time did the state seek to impeach her testimony, but rather sought to develop her testimony; therefore, Evid.R. 611 applied, not Evid.R. 607.Burroughs, supra.
 {¶ 22} In the instant case, Ranesha identified herself as Darkenwald's daughter, she was evasive and uncooperative, and she specifically stated she did not want to testify. The prosecutor asked: "Did a shooting occur at that property on that day? Did a shooting occur at the property on April 23rd of 2002? Just yes or no." The court had to admonish the witness: "Ma'am, you have to answer the questions that are posed to you. You have to answer the questions. You have been subpoenaed to testify." The witness answered, "I don't want to participate."
 {¶ 23} The prosecutor went on to ask other foundational and background questions, and to each question Ranesha replied with "yes" or "no" answers. The prosecutor then asked, "and you had walked outside and you had seen your mother standing near the driver's side door of her car; is that correct?" The witness responded, "I don't remember where they were standing." The prosecutor asked again, "Do you recall when you first came out the residence of 1765 where you saw Leamon and your mother Karen?" The court again had to instruct her to answer. She responded, "No, I don't recall where they were standing."
 {¶ 24} The prosecutor then attempted to refresh her recollection pursuant to Evid.R. 612; however, the witness did not want to cooperate. Finally, the prosecutor asked, "Do you recall telling the police officers that Leamon was standing by the rear bumper of his car?" The witness responded, "Is that what the statement says?" When the prosecutor attempted to have the witness read her statement for the jury, the defense objected, and a side-bar conference was had off the record.
 {¶ 25} On the record, the court summarized the defense's objection to the use of the statement and indicated that the state requested the court declare the witness hostile. The court went through its analysis on the record using Evid.R. 607 and Evid.R. 613 to allow the state to cross-examine the witness with her prior statement given to police. The court stated: "Well, it appears to me that she's a hostile witness. She does not want to testify. She's been refusing to answer. I have had to tell her to answer two of the questions and she turned to me and said, do I have to answer these? I forgot her exact words. I will permit the use of her statement that she made to the police to cross-examine." The court then declared the witness to be hostile and allowed the prosecutor to ask leading questions.
 {¶ 26} While the state may have believed it was impeaching its witness, in reality it was attempting to develop her testimony through leading questions. Therefore, the cross-examination was properly allowed under Evid.R. 611(C), not Evid.R. 607.
 {¶ 27} Evid.R. 607 is inapplicable because it is used when a party wants to impeach their witness with a prior inconsistent statement, which is not the case at bar. The record reveals that the state wanted to elicit testimony consistent with the witness's written statement; however, the witness was being evasive and uncooperative. The witness never directly contradicted her statement or recanted her statement; she merely refused to recall the pertinent facts in her original statement.
 {¶ 28} Evid.R. 607 states the party calling the witness may impeach the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. The existence of surprise is a factual matter left to the trial court's discretion. State v. Diehl (1981), 67 Ohio St.2d 389;State v. Gant (May 18, 1995), Cuyahoga County App. No. 67199. Surprise exists when the party calling the witness demonstrates that the witness's testimony on the stand "is materially inconsistent with the prior written or oral statements [of that witness] and counsel did not have reason to believe the witness would recant when called to testify." State v. Stearns (1982),7 Ohio App.3d 11; see, also, State v. Warren (1990),67 Ohio App.3d 789.
 {¶ 29} A showing of affirmative damage is the second requirement for use of a prior statement to impeach one's own witness. Affirmative damage can be shown when the witness contradicts, denies, or harms the party's trial position.Stearns, supra. However, affirmative damage is not shown where the witness denies knowledge of the facts contained in his prior statement or where he states he does not remember the facts stated therein. See staff note accompanying Evid.R. 607.
 {¶ 30} In this case, it is clear the prosecutor expected the witness to testify consistent with her statement made to detectives after the incident. The record reflects that the witness and the prosecutor did not meet or speak prior to trial, and the witness did not want to review her statement before she testified.
 {¶ 31} At trial, the witness was uncooperative and adverse towards the state and the state was surprised, but it does not indicate damage. Ranesha's original version of her statement was not changed by her refusal to answer questions regarding the shooting, her statement that she did not want to participate in the trial, and her failure to recall where either person was standing. Likewise, when Ranesha questioned what her statement said but did not want to review it to refresh her recollection, she did not deny the facts contained in her statement. She simply refused to acknowledge them. Therefore, although the state was surprised, the record indicates that there was no affirmative damage because she did not directly contradict her statement or recant; hence Evid.R. 607 is inapplicable.
 {¶ 32} The trial court concluded that the statement could come in under Evid.R. 613. This was not accurate because the state was not trying to impeach the witness. Although it may seem that we are splitting hairs, there is a clear distinction between impeaching a witness with a prior inconsistent statement and leading a witness to develop her testimony consistent with her statement. As we stated, in the instant case, the witness did not testify inconsistently with her statement; rather, she refused to recall pertinent information contained therein. The prosecutor was not impeaching the witness with her prior statement; rather, the prosecutor was seeking to develop her testimony consistent with her statement. Therefore, Evid.R. 613 does not apply.
 {¶ 33} When a calling party seeks to impeach its own witness through extrinsic evidence of a prior inconsistent statement, that party must first show surprise and damage by the witness's testimony pursuant to Evid.R. 607, and then examine the witness about the prior inconsistent statement before introducing the extrinsic evidence pursuant to Evid.R. 613(B). State v. Baker
(Nov. 25, 1998), Summit County App. No. 19009. Prior to the admission of the extrinsic evidence, a proper foundation must be laid. "To lay the foundation, (1) the witness is presented with [the existence of] the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given the opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement." Id. citing State v. Theuring
(1988), 46 Ohio App.3d 152, 155. When that witness leaves the stand, the examining party then calls another witness to impeach the previous witness by their prior statement.
 {¶ 34} In the instant case, had Ranesha recanted her statement for the first time while testifying (surprise and damage), claiming, for example, she was told what to write in the statement (acknowledgment and explanation), then the state could have introduced her statement by way of the detective who took her statement.
 {¶ 35} Darkenwald's first assignment of error is nevertheless overruled.
 {¶ 36} "II. The trial court erred in refusing to grant a new trial under Criminal Rule 33(A)(1) and Criminal Rule 33(A)(3)[sic]."
 {¶ 37} Darkenwald argues that she was surprised by the ineffective assistance of counsel which ordinary prudence could not have guarded against and that the ineffective assistance of counsel resulted in irregularity in the proceeding; therefore, Darkenwald should have been granted a new trial. The state argues that Darkenwald has failed to show that the attorney was ineffective and the motion for new trial was found by the court to be untimely.
 {¶ 38} A motion for new trial is within the sound discretion of the trial court, and the court's ruling on the motion will not be disturbed on appeal absent an abuse of discretion. State v.Matthews (1998), 81 Ohio St.3d 375, citing State v. Schiebel
(1990), 55 Ohio St.3d 71, paragraph one of the syllabus. Where there is competent credible evidence to support the trial court's decision, an appellate court should not substitute its judgment for that of the trial court. State v. Adams (Sept. 21, 2000), Cuyahoga App. No. 77127.
 {¶ 39} In the instant case, the court denied the defendant's motion for the following reasons:
"(1) Motion is not timely filed pursuant to CriminalRule 33(B); (2) Court finds that none of the causes raised in motionmaterially affected defendant's substantial rights, specifically;1. Based on State v. Lytle (1976), 48 Ohio St.2d 391, defendanthas failed to show that her lawyer was ineffective andineffectiveness was reasonably likely to change the verdict; 2.Court properly allowed state witness to be impeached under ORE613 and 607 because witness was declared hostile; 3. Trial courtgave proper instructions of law to jury and; 4. Dr. Talica'sAugust 1, 2003 letter does not constitute new evidence."
 {¶ 40} Crim.R. 33 states, in pertinent part:
"(A) Grounds. A new trial may be granted on motion of thedefendant for any of the following causes affecting materiallyhis substantial rights:
 Irregularity in the proceedings, or in any order or ruling ofthe court, or abuse of discretion by the court, because of whichthe defendant was prevented from having a fair trial;
* * *
Accident or surprise which ordinary prudence could not haveguarded against * * *"
 {¶ 41} Subsection (B) sets forth the timing requirements for the filing of a motion for new trial. It indicates that it shall be filed within 14 days after the verdict was rendered unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial. Crim.R. 33(B). The record in this case indicates that the jury returned its verdict on May 30, 2003, and Darkenwald filed her motion for new trial on August 4, 2003. Furthermore, the motion does not allege that the defendant was unavoidably prevented from filing her motion on time. Therefore, the trial court properly denied her motion for new trial. Although it was unnecessary for the trial court to address the merits of the motion because it was untimely, nevertheless the denial was proper because Darkenwald's attorney was not ineffective.
 {¶ 42} A claim of ineffective assistance of counsel requires proof that counsel's "performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from that performance. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976), 48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v.Bradley, supra, paragraph three of the syllabus. The burden is on appellant to prove ineffectiveness of counsel. State v.Gray, Cuyahoga App. No. 83097, 2004-Ohio-1454, citing State v.Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id. Finally, failure to object to error, alone, is not sufficient to sustain a claim of ineffective assistance. State v. Fears (1999), 86 Ohio St.3d 329.
 {¶ 43} Darkenwald alleges numerous instances of ineffectiveness; however, she fails to explain how she was prejudiced by them. After a review of the record, assuming for the sake of argument that trial counsel should have followed appellate counsel's trial strategy, we fail to see how the result would have been any different. Darkenwald's own testimony did not substantiate her self-defense claim. She denied pulling the trigger and held fast to her story that she was holding the gun by the barrel to scare Crawford. Further, Darkenwald claimed that she could not remember how the gun went off and did not remember pulling the trigger. Her testimony was not consistent with a self-defense claim. Again, even if trial counsel had done everything the appellate counsel suggests, those efforts would not have overcome Darkenwald's own testimony.
 {¶ 44} Darkenwald's second assignment of error is overruled.
 {¶ 45} "III. The trial court erred in giving the instruction on capability of a deadly weapon."
 {¶ 46} In Darkenwald's third assignment of error, she alleges that the trial court erred when it failed to include the language, "These are questions of fact for you to decide" at the end of its description of deadly weapon. In addition, Darkenwald argues the court failed to set forth the examples delineated in 4 Ohio Jury Instructions 503.11(8).
 {¶ 47} The record reflects that Darkenwald failed to object to any of the jury instructions; therefore, we review the given instructions for plain error. The standard for plain error is "but for the error, the outcome of the trial clearly would have been otherwise." State v. McKee (2001), 91 Ohio St.3d 292 at 294, citing Crim.R. 52(B); State v. Johnson (2000),88 Ohio St.3d 95. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Long (1978), 53 Ohio St.2d 91.
 {¶ 48} The trial court has discretion to determine proper jury instructions. "The trial court does not commit reversible error if the instructions are sufficiently clear to enable the jury to understand the law as applied to the facts." Atkinson v.Internatl. Technegroup, Inc. (1995), 106 Ohio App.3d 349, 365. "The instructions found in Ohio Jury Instructions are not mandatory. Rather, they are recommended instructions based primarily upon the case law and statutes." State v. Martens
(1993), 90 Ohio App.3d 338, 343. When examining alleged errors in a jury instruction, a reviewing court must consider the jury charge as a whole and "must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." Kokitka v. Ford MotorCo. (1995), 73 Ohio St.3d 89, quoting Becker v. Lake Cty. Mem.Hosp. W. (1990), 53 Ohio St.3d 202, 208. Whether the jury instructions correctly state the law is a question of law which an appellate court reviews de novo. Murphy v. Carrollton Mfg.Co. (1991), 61 Ohio St.3d 585. A reviewing court will not reverse unless an instruction is so prejudicial that it may induce an erroneous verdict. Bostic v. Conner (1988),37 Ohio St.3d 144.
 {¶ 49} A review of the record indicates that the court made it clear that the jury's duty was to "weigh the evidence and determine the disputed questions of fact." (Tr. at 406.) This court finds that the failure to repeat Ohio Jury Instructions verbatim does not constitute a miscarriage of justice, when it is clear the court sufficiently articulated the applicable law to the jury. Darkenwald's third assignment of error is overruled.
 {¶ 50} Assignments of error four through eight will be discussed together.
 {¶ 51} "IV. The trial court erred in its instruction on self-defense which constituted plain error because the jury should have been instructed on honest mistake less than deadly force."
 {¶ 52} "V. The trial court erred in instructing the jury the defendant had a duty to retreat if the defendant did not have reasonable grounds to believe she was in imminent or immediate danger of death or great bodily harm and that the only means of escape from that danger was by use of deadly force."
 {¶ 53} "VI. The trial court erred in instructing the jury on the excess force instruction."
 {¶ 54} "VII. The trial court erred in instructing the jury on the definition of preponderance of the evidence."
 {¶ 55} "VIII. The trial court erred in instructing the jury if the weight of the evidence is equally balanced or if you are unable to determine which side had the affirmative defense — the defense has not established such affirmative defense."
 {¶ 56} Again, we review these arguments under the plain error standard because Darkenwald did not object to the jury instructions. Each assignment is based on the argument that the incorrect self-defense charge was read to the jury. Darkenwald argues that the self-defense instruction should have been the "self-defense against danger of bodily harm" under 4 Ohio Jury Instructions 411.33. We disagree.
 {¶ 57} The court properly instructed the jury as to "self-defense against danger of death or great bodily harm" under 4 Ohio Jury Instructions 411.31 because the defendant is alleged to have used deadly force. "[C]ourts have held that when lethal force is used in self-defense, the perceived threat to the accused must be of death or great bodily harm." State v. Dietz,
Cuyahoga App. No. 81823, 2003-Ohio-3249, citing City of Akron v.Dokes (1986), 31 Ohio App.3d 24. In the instant case, the defendant was alleged to have shot at the victim; that is lethal force, thus requiring the deadly force self-defense instruction.
 {¶ 58} Additionally, Darkenwald questions certain semantics in the charge itself which we find to be without merit. For example, the court instructed, "If the weight of the evidence is equally balanced or if you are unable to determine which sidehad the affirmative defense, then the defense has not established such affirmative defense." (Emphasis added.) Darkenwald argues that the court should have instructed, "If the weight of the evidence is equally balanced or if you are unable to determine which side of an affirmative defense has thepreponderance, then the defense has not established such affirmative defense." We find that the court's instruction to the jury was a proper statement of the law and given in such a manner that was not misleading to the jury.
 {¶ 59} Darkenwald's assignments of error four through eight are overruled.
 {¶ 60} "IX. The trial court erred in including the jury instructions on the lesser included offense aggravated assault by stating that `the defense claims.'"
 {¶ 61} Darkenwald argues that this language incorrectly implied that the defense wanted this instruction. Once again, we review this assignment of error under the plain error standard and find the argument to be without merit. While it is true Darkenwald did not ask for the aggravated assault instruction, it is of no consequence to her and could only have helped to reduce her culpability if believed by the jury.
 {¶ 62} In State v. Deem (1988), 40 Ohio St.3d 205, the Supreme Court held that "in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury." In the case sub judice, the court determined that there was sufficient evidence to warrant the inferior offense charge of aggravated assault and gave the instruction without objection from the defense. Without reaching the issue of sufficient evidence of serious provocation, we find no error in instructing the jury on aggravated assault. Although the court misspoke when it stated "the defense claims * * *," we find that the jury was not misled.
 {¶ 63} Darkenwald's ninth assignment of error is overruled.
 {¶ 64} "X. The trial court erred in failing to grant a new trial in light of the fact that new evidence was discovered that corroborated the defendant's testimony as that the physical assault on her person which put her in fear for her safety and which caused her to resort to self-defense."
 {¶ 65} Darkenwald argues that she received a letter from her doctor and that he could now testify that he has observed symptoms which may have resulted from the physical assault by the victim, which corroborates her position that she was in fear for her safety, requiring her to defend herself. Darkenwald argues that this new evidence was not chronicled before trial and thus is newly discovered evidence. We disagree.
 {¶ 66} As stated above, a motion for new trial is within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion. To warrant the granting of a motion for new trial in a criminal case based on newly discovered evidence, it must be shown that the new evidence (1) discloses a strong possibility that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. State v.Petro (1947), 148 Ohio St. 505.
 {¶ 67} A review of the letter itself merely documents post-traumatic stress among a number of chronic physical conditions suffered by Darkenwald. In this letter, the doctor neither indicates the source of the post-traumatic stress nor proffers that the disorder caused her actions or impaired her ability to aid in her defense. In the absence of such evidence, we do not find the trial court abused its discretion in failing to grant a new trial.
 {¶ 68} The judgment is affirmed.
Judgment affirmed.
Cooney, P.J., and Calabrese, Jr., J., concur.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.