[Cite as *Bradford v. A. Star Properties, L.L.C.*, 2023-Ohio-3451.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

FAITH BRADFORD

    Appellant

    v.

A STAR PROPERTIES, LLC, et al.

    Appellees

C.A. No.    30466

APPEAL FROM JUDGMENT
ENTERED IN THE
AKRON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    21-CV-00190

DECISION AND JOURNAL ENTRY

Dated: September 27, 2023

STEVENSON, Judge.

{¶1} Appellant, Faith Bradford, appeals from the judgment of the Akron Municipal Court granting judgment in favor of Appellees, Tri Star Holdings, LLC ("Tri Star"), A Star Properties, LLC ("A Star"), and Kevin McCann ("Mr. McCann") (collectively "Appellees") on Ms. Bradford's civil conversion claim and dismissing her claims against Mr. McCann, individually. For the reasons set forth below, we affirm the trial court's decision.

I.

{¶2} On May 23, 2020, Ms. Bradford texted Mr. McCann, manager of Tri Star and member and sole owner of A Star, about an apartment rental. Ms. Bradford subsequently met Mr. McCann at a Manchester Road apartment complex to look at an apartment. Ms. Bradford was interested in an apartment that, although currently occupied, would be available as soon as it was vacated and remodeled ("the apartment"). Tri Star owned the apartment and A Star was "hired to oversee the management" of the apartment complex.

**{¶3}** Ms. Bradford completed a rental application but never signed a lease or entered into a written rental agreement with Appellees. Ms. Bradford gave Mr. McCann $710.00 towards an apartment rental. This sum included $525.00 for a deposit, $150.00 for a pet deposit, and a nonrefundable $35.00 application fee. Mr. McCann gave Ms. Bradford a receipt for the deposits and application fee.[1]

**{¶4}** Ms. Bradford often inquired about signing a lease for an apartment rental. Mr. McCann told Ms. Bradford in a May 31, 2020 text that a "lease can not be signed till the apartment is vacant and finished" and, again in a June 9, 2020 text, that "we do not sign the lease until the apartments done and all the money has been paid[.]"[2] Remodeling work had to be performed before Mr. McCann would allow Ms. Bradford to sign a lease and occupy the apartment.

**{¶5}** Ms. Bradford needed to be "out of [her] sister's ASAP" and was anxious to sign a lease with Appellees. Ms. Bradford told Mr. McCann that she was "excited to move in" and that she had "all of the rent[.]" Mr. McCann told Ms. Bradford that "Everything is  taking extra long due to the virus."

**{¶6}** Mr. McCann informed Ms. Bradford in a July 15, 2020 text message that the remodeling was complete. Ms. Bradford asked when she could "sign the lease" and Mr. McCann, in response, said "Probably Friday or Saturday morning[.]" Ms. Bradford responded that "Friday works[.]"

---

[1] The trial court granted summary judgment in favor of Appellees on Ms. Bradford's Landlord-Tenant Act and Breach of Contract claims. That ruling was not appealed. Ms. Bradford's "deposit" was money given to Appellees in anticipation of an apartment rental. As stated, Ms. Bradford never signed a lease or entered into a written rental agreement with Appellees. Accordingly, the deposit was not a security deposit as defined by R.C. 5321.01(E).

[2] All text messages between Ms. Bradford and Mr. McCann are cited verbatim.

**{¶7}** The next day, July 16, 2020, Mr. McCann texted Ms. Bradford and asked "What time Saturday morning do you want to meet to sign the lease?" Ms. Bradford responded, "I can't come sooner then Saturday I don't have any help moving this weekend if I can't get anyone to help me I may have to wait until next weekend[.]" Mr. McCann was not available before Saturday morning. Mr. McCann also told Ms. Bradford in a text to "Bring $150.00 pet deposit and $200.00 prorated July. Plus the escrow monies of $1050.00" for a "Total $1400.00[.]" Ms. Bradford said that she was "probably going to keep my cat at my sister's bc I can't afford the extra pet deposit[.]" With just one pet, Mr. McCann informed Ms. Bradford that she would need to bring "$1250.00" with her when signing the lease.

**{¶8}** Ms. Bradford told Mr. McCann that she did not have the money "right now" because she would have to "hire ppl to help me move bc of how long it took[.]" Mr. McCann responded that the apartment was ready and that he had "others interested and ready to move. If you don't want to sign then I'll move on[.]" At this point, the parties stopped talking about an apartment rental and their discussions focused on Ms. Bradford's request for the return of the money she had given Mr. McCann.

**{¶9}** Ms. Bradford asked Mr. McCann if he could "meet me today so I can pick up my deposit?" Mr. McCann informed Ms. Bradford that he could meet "Saturday morning" and that her deposit would be "prorated die to your cancelled contract[.]" Ms. Bradford informed Mr. McCann that she "didn't have a contract" and Mr. McCann responded that she would "get the pet deposit and $100 back." Ms. Bradford again informed Mr. McCann that she "never signed anything" and that if she did not receive a "full refund" she would "get [her] lawyer involved[.]"

{¶10}  Ms. Bradford again told Mr. McCann that she would like [my "710 back[.]"  Mr. McCann responded "That's my offer.  I'm totally disgusted with how you screwed me[.]"  Ms. Bradford informed Mr. McCann that she "didn't screw" him, to which Mr. McCann responded:

> I worked.  Very hard trying to get that unit done for you, we replaced all the floors carpeting.  Everything is been repainted new windows new toilet appliances, everything.  I spent thousands to try to accommodate you and put you into a nice unit.  My offer stands.  150.  Refund that's it.  If you want it.  Give me an address I will send you a certified letter.  With a cashier's check from my lawyer.

> Otherwise, please have your lawyer leave his name and number and I will have my lawyer contact him.

> There is no chance we will meet.  If you want the 150 send me your address.  I will send you a certified check with a letter of release from my lawyer.  Thank you have a good day.

{¶11}  Ms. Bradford again said that she "would like my full refund[.]"  In response, Mr. McCann again offered "the 150" and asked Ms. Bradford to send him her address so that he could send her "a certified check with a letter of release from my lawyer."

{¶12}  Ms. Bradford's attorney, Michael Fine, texted Mr. McCann about the return of Ms. Bradford's money on July 22, 2020.  Attorney Fine provided his telephone number and indicated to Mr. McCann that "If you tell me you lawyers name, I will contact them[.]"  Attorney Fine again texted Mr. McCann on July 27, 2020, and stated "I have not heard back from your attorney.  Please update me as to status.  Thank you."

{¶13}  Appellees maintain that, because they were never provided with an address, they were unable to send a refund to Ms. Bradford.  On her May 28, 2020, rental application, Ms. Bradford provided a current address on Princeton Street in Akron.  Ms. Bradford listed "Jan – 2019" as the "date out" of the Princeton Street address.  Ms. Bradford was trying to move out of the Princeton Street address and she previously told Mr. McCann that she "need to be out of my

sister's ASAP[.]" Mr. McCann testified that he does not rely on the address provided in a rental application "because people move around."

{¶14} After a bench trial was held, the trial court issued a written decision granting judgment in favor of Appellees on Ms. Bradford's civil conversion claim. The trial court also dismissed Ms. Bradford's claims against Mr. McCann, individually. Ms. Bradford appeals the trial court's decision, asserting two assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLEES CONVERTED BRADFORD'S DEPOSIT FUNDS WHEN THE FACTS ARE UNDISPUTED THAT – 1. APPELLEES WILLFULLY EXERCISED DOMINION AND CONTROL OVER BRADFORD'S DEPOSIT FUNDS, 2. APPELLEES HAD NO LEGAL OR CONTRACTUAL RIGHT TO HER DEPOSIT FUNDS (BRADFORD REQUESTED THEIR RETURN AND APPELLEES REFUSED), AND 3. BRADFORD WAS DAMAGED IN THE LOSS OF THE USE OF HER DEPOSIT FUNDS.**

{¶15} Ms. Bradford argues in her first assignment of error that the trial court erred when it failed to find that Appellees converted her deposit funds. We disagree.

{¶16} The relevant facts are not in dispute. At issue in this appeal is whether the trial court correctly applied the law to the undisputed facts. As this Court has recognized, a *de novo* standard of review therefore applies. *Young v. Young*, 9th Dist. Wayne No. 09CA0067, 2010-Ohio-3658, ¶ 17 ("[w]hether the trial court correctly applied the law to the facts of a case presents a question of law, which we review de novo.").

{¶17} Ms. Bradford asserts a conversion claim against Appellees.[3] "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner or

---

[3] This Court recognizes that, where a conversion action is based on cash, the action will "only lie if 'identification is possible and there is an obligation to deliver the specific money in

withholding it from [her] possession under a claim inconsistent with [her] rights." *State ex rel. Toma v. Corrigan*, 92 Ohio St.3d 589, 592 (2001), quoting *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). To prevail on a conversion claim, a plaintiff must demonstrate "(1) that [she] owned or had the right to control the property at the time of the conversion, (2) the defendant's wrongful act or disposition of the plaintiff's property rights, and (3) damages." *Pelmar USA, L.L.C. v. Mach. Exchange Corp.*, 9th Dist. Summit No. 25947, 2012-Ohio-3787, ¶ 12.

{¶18} "It is not necessary that the property be wrongfully obtained" for there to be a conversion. *McCartney v. Universal Elec. Power Corp.*, 9th Dist. Summit No. 21643, 2004-Ohio-959, ¶ 14. When property is otherwise lawfully held, "'[a] demand and refusal * * * are usually required to prove the conversion * * * [.]'" *Ferreri v. Goodyear Local No. 2 United Rubber, Cork, Linoleum & Plastic Workers of Am. Home Assn.*, 9th Dist. Summit No. 16311, 1994 WL 45740, *2 (Feb. 9, 1994), quoting *Ohio Tel. Equip. & Sales Inc. v. Hadler Realty Co.*, 24 Ohio App.3d 91, 94 (10th Dist.1985).

{¶19} "[T]he plaintiff bears the burden of proving all the elements necessary to sustain [a conversion claim] by a preponderance of the evidence." *Hutchings v. Hutchings*, 6th Dist. Sandusky No. S-19-008, 2019-Ohio-5362, ¶ 19, citing *J.B. Walter Const. Inc. v. Futronics, Inc.*,

---

question.'" *Haul Transport of VA, Inc. v. Morgan*, 2d Dist. Montgomery No. CA14859, 1995 WL 328995, *3 (June 2, 1995), quoting *Security Fed. S. & L. Assn. of Cleveland v. Keyes*, 11th Dist. Geauga No. 89-G-1524, 1990 WL 93135, *2 (June 29, 1990). *Accord McCartney v. Universal Elec. Power Corp.*, 9th Dist. Summit No. 21643, 2004-Ohio-959, ¶ 14, quoting *Hinkle v. Cornwell Quality Tool Co.*, 40 Ohio App.3d 162, 166 (9th Dist.2004) ("'Although money is property which is often difficult to identify, it is well settled that an action will lie for its conversion when its identification is possible and there is an obligation to deliver the specific money in question.'")

The trial court did not analyze whether the money Ms. Bradford gave Mr. McCann could be the subject of a conversion claim. The parties agree that the money Ms. Bradford gave to Mr. McCann was kept in a separate envelope and, as such, was specifically identifiable. Thus, we assume without deciding that a conversion claim was properly asserted in this matter.

6th Dist. Lucas No. L-99-1080, 2000 WL 5911, *2 (Jan. 7, 2000). "Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value." (Internal quotations and citations omitted). *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7; *State v. Leatherwood*, 9th Dist. Summit No. 15132, 1991 WL 262890, *1 (Dec. 11, 1991) ("[p]reponderance of the evidence means the greater weight of the evidence, that is evidence that outweighs or overbalances the evidence opposed to it.").

{¶20} Ms. Bradford argues in her first assignment of error that "Appellees refused to return * * * [her] deposit" and that "[l]egally, the tort of conversion was complete at that time." Ms. Bradford maintains that she established the tort of conversion and that the trial court erred when it failed to rule in her favor. We disagree and conclude that the trial court correctly determined that Ms. Bradford failed to establish a civil conversion claim by preponderance of the evidence.

{¶21} When Ms. Bradford decided that she was not going to rent an apartment from Appellees, she asked Mr. McCann if he was able to "meet me today so I can pick up my deposit?" Mr. McCann responded that he could meet Ms. Bradford "Saturday morning" and that the return would be "prorated die to your cancelled contract[.]" Ms. Bradford continued to request "a full refund" and indicated that she would get her "lawyer involved if" if she did not "get the full amount[.]" Mr. McCann, in response, continued to offer a $150.00 refund and he stated that the new carpeting, windows, toilet, appliances, and new paint were made "to try to accommodate you and put you into a nice unit." Mr. McCann also repeatedly requested that Ms. Bradford provide him with an address to send Ms. Bradford her money. Ms. Bradford never provided that address, making it impossible for Mr. McCann to refund the money to her. Mr. McCann testified that

"people move around"; Ms. Bradford told Mr. McCann in their text exchanges that she needed to be out of sister's "ASAP"; and Ms. Bradford's rental application listed "Jan – 2019" as the "date out" of her "current" Princeton Street address. Based on this evidence, Appellees never refused to return money to Ms. Bradford; but as the trial court found, they could not because of the lack of a definite address. Accordingly, the trial court's finding that Mr. McCann did not refuse Ms. Bradford's demand is supported by a preponderance of the evidence.

{¶22} Ms. Bradford was required to establish, by preponderance of the evidence, each element of her conversion claim. *Hutchings*, 6th Dist. Sandusky No. S-19-008, 2019-Ohio-5362, at ¶ 19. Because Ms. Bradford failed to establish each element by a preponderance of the evidence, we conclude that the trial court properly granted judgment in favor of Appellees on the civil conversion claim. Ms. Bradford's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN RULING THAT KEVIN McCANN CANNOT BE HELD PERSONALLY LIABLE FOR HIS OWN TORTIOUS CONDUCT.**

{¶23} Ms. Bradford argues in her second assignment of error that the trial court erred in ruling that Mr. McCann cannot be held personally liable for his own tortious conduct. Ms. Bradford acknowledges that Mr. McCann's "liability is an issue if a tort occurred, *i.e.*, a conversion took place." Based on this Court's conclusion on Ms. Bradford's first assignment of error, the second assignment is overruled.

### III.

{¶24} The judgment of the Akron Municipal Court finding that Ms. Bradford failed to establish a civil conversion claim is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

HENSAL, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶25} I agree that the trial court's judgment that granted judgment to Tri Star Holdings, LLC, A Star Properties, LLC, and Kevin McCann should be affirmed. Because I would affirm that judgment on a different basis, however, I concur in judgment only.

{¶26} The Supreme Court of Ohio has stated that "the threshold inquiry for a conversion claim is whether there indeed exists some property right." *Bunta v. Superior VacuPress, LLC*, __ Ohio St.3d __, 2022-Ohio-4363, ¶ 34. In the same case, the Supreme Court cautioned that "courts must be careful not to extend the scope of conversion to rights that are 'more appropriately considered under wholly distinct legal principles' lest the extension lead to 'confusing, unnecessary, and improper' results.'" *Id*. at ¶ 35, quoting *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, 227 (1976), rev'd on other grounds, 433 U.S. 563 (1977).

{¶27} This Court asked the parties to brief the question of whether the cash at issue in this case was properly the subject of a conversion claim. As the majority opinion notes, the parties' responses agreed that "the money Ms. Bradford gave to Mr. McCann was kept in a separate envelope and, as such, was specifically identifiable[.]" This is only part of the question, however. The analysis of a conversion claim requires the court to consider the nature of the alleged *property right* at issue because conversion arises from "an obligation to keep intact and deliver * * * specific money rather than to merely deliver a certain sum." *Randleman v. Fidelity Nat. Title Ins. Co.*, 465 F.Supp.2d 812, 826 (N.D. Ohio 2006), quoting *Haul Transport of VA, Inc. v. Morgan*, 2d Dist. Montgomery No. 14859, 1995 WL 328995, *4 (June 2, 1995). Even assuming that the parties' representation on this point are accurate, Ms. Bradford did not allege that Tri Star Holdings, LLC, A Star Properties, LLC, and Kevin McCann had "an obligation to keep intact and deliver" *that specific money* to her "rather than to merely deliver a certain sum." *Id*. at 826, quoting *Morgan* at *4.

{¶28} In *Bunta*, the Supreme Court specifically cautioned courts to be wary of conversion claims that are intertwined with contract principles. *Id*. at ¶ 35. Given the nature of this case and the Supreme Court's caution regarding claims intertwined with contract principles, I would affirm

the trial court's judgment on the basis that a conversion claim cannot lie under these circumstances.

Accordingly, I concur only in the judgment reached by the majority.

APPEARANCES:

MICHAEL L. FINE, Attorney at Law, for Appellant.

GREG ANDREW MANES, Attorney at Law, for Appellees.