[Cite as *Tillimon v. Timmons*, 2016-Ohio-7424.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


Duane J. Tillimon                                Court of Appeals No. L-15-1302

      Appellant                              Trial Court Nos. CVG-14-16092

v.

David Timmons, et al.                            **DECISION AND JUDGMENT**

      Appellees                              Decided:   October 21, 2016

* * * * *

Kevin R. Eff, for appellant.

James P. Silk, Jr., for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Toledo Municipal Court, Housing Division. Appellant, Duane Tillimon, argues that the trial court erred when it dismissed his claim for damages against his former lessee, appellee, David Timmons. For the reasons that follow, we affirm.

**Facts and Procedural Background**

{¶ 2} Appellant is the owner and landlord of residential property located at 4445 Woodmont Rd. in Toledo, Ohio. On September 1, 2011, appellant entered into a long-term lease agreement with Julie Good and Catherine Bernhofter. The lease was to end on August 31, 2016. Midway through the lease term, Good and Bernhofter notified appellant that they had to break the lease agreement. Under the terms of the lease, Good and Bernhofter would still be responsible for the monthly rent payments of $900 until the property was re-rented. Rather than continuing to pay this amount, Good suggested that her son, appellee, move into the residence. On November 1, 2013, appellant and appellee entered into a separate lease agreement that ended on August 31, 2016. Notably, the original lease with Good and Bernhofter was not terminated. The leases also did not reference each other, nor was appellee listed as a co-tenant. Instead, the two leases purportedly ran concurrently.

{¶ 3} On November 17, 2014, appellant initiated forcible entry and detainer proceedings, as well as a claim for damages under R.C. 5321.05, against Good, Bernhofter, and appellee. The complaint prayed for "a judgment in the amount of $15,000.00 or more against Defendants Timmons, Bernhofter and Good for the cost of unpaid rent, cleaning and repairs beyond normal wear, utility expenses, maintenance expenses, and re-rental expenses." A hearing was held on December 3, 2014, at which the defendants consented to the eviction. The matter was continued for further

2.

proceedings on the claim of damages, with answers to the complaint due on December 31, 2014.

{¶ 4} Thereafter, Good and Bernhofter failed to file an answer to appellant's complaint for damages, and a default judgment was entered against them. Appellee, on the other hand, filed an answer and contested the damages. The trial court set a hearing to determine the amount of damages owed by Good and Bernhofter on May 5, 2015. At that hearing, appellant submitted an affidavit itemizing his damages for a total amount of $9,644.57. Subsequently, judgment was entered against Good and Bernhofter, jointly and severally, in that amount.

{¶ 5} On May 27, 2015, appellee filed a motion for summary judgment seeking to have the cause dismissed on the grounds that the default judgment against Good and Bernhofter precluded a judgment against him on the basis of the doctrine of judicial estoppel. The trial court denied the motion, stating that it must determine whether the two leases ran concurrently or if appellee's lease terminated the lease of Good and Bernhofter. The matter was then scheduled for a trial on October 5, 2015.

{¶ 6} At the beginning of the trial, the parties discussed appellee's motion for summary judgment. Appellee stated that part of his argument was that appellant could not claim against him the same damages that he obtained a judgment for against Good and Bernhofter. Appellee reasoned that appellant had already established that Good and Bernhofter caused the damages, and since the parties signed separate leases and occupied the property at separate times, there was no legal relationship between them to impose

3.

joint and several liability. Appellant responded that appellee was confusing the issue; appellant was not seeking to duplicate his damages, rather he was seeking joint and several liability between the defendants for his damages pursuant to their obligations under the concurrent leases.

{¶ 7} Following this discussion, the trial court took testimony. Appellant testified on his own behalf, and also called appellee and two other witnesses. Appellant testified that he believed the first lease did not expire. Rather the leases were concurrent, and the intent was to mitigate the breach caused by Good and Bernhofter moving out by renting to appellee. As to the actual damage to the house, appellant submitted all of his receipts, testifying that carpeting was missing from the house, that appellee illegally hooked up to the natural gas service, that there was damage to the fence, and that the drapery, hardware, and blinds were missing from the house. Appellant testified that when he negotiated the new lease with appellee, he was able to inspect the house and did not observe any damages caused by Good and Bernhofter. He concluded that the damage was caused by appellee. Further, appellant testified that appellee did not notify him of any damage to the house at the time the lease was executed, despite a term in the lease agreement obligating appellee to inspect the dwelling and notify appellant of any defects within three days.

{¶ 8} The remainder of appellant's testimony pertained to issues with the gas service to the house. Appellant testified that in November 2014, appellee contacted him because there was no gas service to the house due to a gas leak. Appellant asked how the

4.

gas company learned of the leak, and appellee stated that he had called them to complain about his bill. When appellant went to the property to inspect the situation, he saw that the entire gas meter had been removed by the gas company, which led him to believe that appellee had had an illegal hookup. Shortly thereafter, appellee moved out of the house, and because there was no heat, the pipes froze requiring repairs to the gas and water lines.

{¶ 9} Appellant next called James Zawodny, a representative of Columbia Gas of Ohio. Zawodny testified that in July 2014, the gas service was terminated on appellee's account due to nonpayment. In September 2014, Columbia Gas noticed unauthorized usage at the residence, and shut off the gas and removed the meter. Appellee paid the balance on October 31, 2014, and gas was restored.

{¶ 10} Jacob Jondro testified next. Jondro is appellee's girlfriend's brother-in-law, and is a plumber by trade. Jondro testified that he performed air tests on the gas lines at the residence, and found several leaks. He further testified that when he arrived the gas meter had already been removed, and he did not turn the gas back on.

{¶ 11} Lastly, appellant called appellee as a witness. Appellee testified that he did not turn the gas to the house back on after it was disconnected. Instead, he explained that the worker who came to shut off the gas in July failed to actually turn it off.

{¶ 12} After appellant rested, appellee testified on his own behalf. Appellee testified that after he had made the payment to restore gas service to the residence, Columbia Gas came out and said that it could not install the meter due to a leak in the gas lines in the residence. Appellee explained that is what precipitated his call to appellant in

5.

November 2014. In response to the call, appellant stated that Jondro's estimate was too high, and that he would get someone to do it himself. Appellee testified that appellant kept putting off fixing the gas leak, which led to appellee vacating the premises due to a lack of heat and hot water.

{¶ 13} Appellee also testified as to the condition of the house when he moved in. He stated that the carpet was in "terrible shape," there were no curtains or rods, none of the doors would latch, there were damaged ceramic fixtures, and the walls were dirty and had lots of nail holes in them. As to the missing curtains and rods, appellee testified that his girlfriend's family purchased the curtains and rods for him as a gift, and when he moved he took those items with him. On cross-examination, appellant attempted to question appellee over several letters that appellant apparently sent to him, but appellee testified that he did not recall receiving those letters.

{¶ 14} As his only other witness, appellee called his girlfriend, Emily Miller, to testify. Miller testified that when appellee moved into the residence, the carpet was stained, there were no blinds or curtains, the windows would leak, doors would not close all the way, and the walls were dirty and paint was chipping off. Miller also confirmed that her parents purchased curtains for appellee for Christmas.

{¶ 15} Finally, appellant called himself as a rebuttal witness. Appellant testified to the letters that he sent to appellee in November 2014, in which he indicated that Columbia Gas would not reconnect service for him because it had been terminated first for nonpayment and then for an illegal hookup. Only appellee could have the gas

6.

restored. Appellant also stated that there were no red tags on the gas lines inside of the house indicating a leak. He offered that he could have a plumber or heating contractor inspect the lines if appellee provided access to the house, but he never received a response from appellee.

{¶ 16} At the conclusion of the trial, the trial court took the matter under advisement. The court entered its judgment a couple of days later on October 9, 2015. The court found that appellant was requesting a judgment against appellee for the same damages that were awarded to him against Good and Bernhofter. The court noted,

> [T]he judgment obtained by [appellant] against Good and Bernhofter
>
> covers the entirety of the contract period entered into by Defendants Good
>
> and Bernhofter. If the damages occurred after the rental agreement was
>
> executed between [appellant] and [appellee], why did [appellant] seek
>
> damages from Good and Bernhofter? Based upon those representations, he
>
> should have sought damages against [appellee] only.

The court then identified the issue as "whether or not [appellant] should be awarded a judgment for damages against [appellee], and should the judgment be declared joint and severable with the judgment awarded to Defendants Good and Bernhofter." In resolving the issue, the court found that judicial estoppel applied: "[Appellant] used the same evidence (Plaintiff's Exhibit 1) in [appellee's] claim as was used in prior judgment. [Appellant] made no distinction as to which damages were caused by which Defendant." Therefore, the trial court dismissed appellant's claim against appellee.

7.

## Assignments of Error

{¶ 17} Appellant has timely appealed the trial court's October 9, 2014 judgment, asserting three assignments of error for our review:

1. The trial court erred, as a matter of law, in failing to find Defendants Timmons, Good, and Bernhofter jointly and severally liable for Plaintiff's damages.

2. The trial court erred, as a matter of law, in holding that the doctrine of judicial estoppel precludes judgment being rendered against Defendant David Timmons.

3. The trial court's findings of facts were against the manifest weight of the evidence.

## Analysis

{¶ 18} Appellant's assignments of error are interrelated, thus we will address them together. In his first assignment of error, appellant argues that appellee should be held jointly and severally liable with Good and Bernhofter for the damage caused to the residence. However, before we can address the issue of joint and several liability, we must first determine whether appellee is liable at all. In the proceedings below, appellee argued, and the trial court agreed, that he could not be held liable under the doctrine of judicial estoppel. This is the subject of appellant's second assignment of error.

{¶ 19} "The doctrine of judicial estoppel prohibits a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior

8.

proceeding." *State ex rel. Motor Carrier Serv. v. Rankin*, 135 Ohio St.3d 395, 2013-Ohio-1505, 987 N.E.2d 670, ¶ 33, citing *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 25. "The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court." *Greer-Burger* at ¶ 25, quoting *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir.1998).

{¶ 20} Here, appellee relies on appellant's affidavit submitted in support of the damages hearing on the default judgment to demonstrate appellant's inconsistent positions. Appellee argues that appellant first claimed that Good and Bernhofer caused the damages to the residence for purposes of the default judgment, and subsequently claimed that appellee caused the damages to the residence at trial. However, appellee's argument misconstrues the nature of appellant's affidavit.

{¶ 21} In the affidavit, appellant does not aver that Good and Bernhofer caused the damage to the residence. Instead, the affidavit contains a list of appellant's expenses, stated as "The Defendants owe me reimbursement for * * *." As to the actual causation of damages, the affidavit only states that "The natural gas outside shut off valve and the natural gas lines inside the house were tampered with by Defendant David Timmons and/or Defendant David Timmons' Plumber Jacob Jondro."

{¶ 22} Thus, because appellant has not asserted that Good and Bernhofer caused the actual damage to the residence, but rather has consistently argued that appellee caused the damage yet all the defendants are liable under the concurrent lease agreements, we

9.

find that appellant has not taken a contrary position during these proceedings. Therefore, we hold that the trial court erred when it applied the doctrine of judicial estoppel to bar appellant's claim against appellee.

{¶ 23} However, "a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof." *Joyce v. General Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). Here, we find that the cause of action against appellee for damages under R.C. 5321.05 must be dismissed for a different reason. R.C. 5321.05(A) provides a list of obligations of a tenant. R.C. 5321.05(C)(1) states, in pertinent part, "If the tenant violates any provision of this section * * * the landlord may recover any actual damages that result from the violation together with reasonable attorney's fees." Notably, the definition of a "tenant" is found in R.C. 5321.01(A), which provides, "'Tenant' means a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others." Under the facts of this case, we hold that appellee is not a "tenant."

{¶ 24} "[A] lease gives the right of possession of the land, and the exclusive occupation of it for all purposes not prohibited by its terms." *Pitts v. Cincinnati Metro. Housing Auth.*, 160 Ohio St. 129, 138, 113 N.E.2d 869 (1953). Appellant, in executing the lease with Good and Bernhofter, gave them the exclusive right of possession of the land, and, at the trial, appellant provided uncontroverted testimony that the lease with Good and Bernhofter was not terminated. Appellant further argues in his third assignment of error on appeal that the trial court erred in referring to his lease with

10.

appellee as a "sublease."  As discussed above, appellant has consistently taken the position that the lease agreement with appellee and the lease agreement with Good and Bernhofter are concurrently running, separate leases.  However, because appellant had already transferred the right of possession of the residence to Good and Bernhofter, appellant had no right of possession to grant to appellee.  Therefore, appellee is not "a person entitled under a rental agreement to the use and occupancy of residential premises to the exclusion of others."  R.C. 5321.01(A).  Consequently, appellant's claim for damages against appellee for violating the obligations of a tenant under R.C. 5321.05 must be dismissed.

{¶ 25} Accordingly, appellant's assignments of error are not-well taken.

### Conclusion

{¶ 26} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.      _____
                 JUDGE
Thomas J. Osowik, J.

James D. Jensen, P.J.       JUDGE
CONCUR.

                 JUDGE

11.